## A93A2383. BLAIR v. POYTHRESS.
(440 SE2d 261)

BLACKBURN, Judge.

We granted Blair's discretionary application to determine whether continued abusive treatment by an employer constitutes "good cause" to justify an employee's voluntary cessation of employment and prevent the disqualification from the receipt of unemployment compensation benefits under OCGA § 34-8-194.

The appellant, Ann Blair, had been employed with her most recent employer, Sarge's Broasted Chicken, as a cook intermittently for approximately five years prior to June 1992. Before an administrative hearing officer, Blair testified that she had been subjected to verbal abuse from Kenneth Williams, the owner of the restaurant and her immediate supervisor during this five-year period. The evidence is in conflict as to the events leading up to Blair's cessation of employment with Sarge's on June 20, 1992. On June 19, 1992, Williams complained about her manner of performing an assigned task, and in complaining,

used profane language. After she asked him not to speak to her in that manner, he threatened to shoot her in the head with a gun and kill her. He subsequently physically assaulted her. Blair did not cease her employment at that time because she needed the job, and continued to work on that day until she was told by Williams that it was time for her to go home. Upon her return to work on the following day, Williams, again using profane language, berated her for informing other employees of the bruises that she received during the physical attack, and pounded his hand on a table. Obscenities were subsequently directed at Blair by Williams as he falsely accused her of not performing her work duties, and asked her to leave the premises. As Blair thought that she had been discharged by Williams, she gave Williams the keys to the restaurant and left the premises.

During his testimony at the hearing, Williams denied verbally abusing Blair, but admitted that he grabbed her arms on June 19, 1992, to prevent himself from falling on one occasion when he tripped on a small table in the kitchen of the restaurant. He admitted that Blair's work performance normally was good, but her job performance had been recently affected by family problems. He did admit that he asked her to leave on June 20, 1992, if she could not perform her required tasks after she had indicated earlier that she was going to quit. However, she did not leave at that point, and instead prepared breakfast for a customer. Afterwards, she informed him that she was quitting at the end of her shift, and he told her not to wait because she could leave at that point. Although she left the premises, she did not inform him of the reason why she was leaving. She had earlier indicated that she would quit if he hired a certain employee. A cook employed by the restaurant testified that Blair, while in tears, informed her on the morning of June 20, 1992, that she was not going to continue to work for Williams but did not state why she was going to discontinue her employment.

Blair was initially awarded unemployment compensation benefits effective June 28, 1992. At Sarge's request, the award of unemployment compensation in favor of Blair was reviewed by an administrative hearing officer. In reversing the award of benefits, the hearing officer found that it was likely that Blair quit her employment but she did not make a factual finding on the basis for Blair's voluntary departure. The hearing officer indicated that if Blair had ceased her employment based on the employer's verbal abuse which had occurred for years, this reason would not constitute a good work-connected cause because Blair had accepted verbal abuse as a condition of her employment. The hearing officer concluded that since there had been no change in circumstances to cause the work to become unsuitable, her voluntary departure was without good cause. The Board of Review adopted the findings made by the hearing officer, and, with one

member dissenting, affirmed the decision of the hearing officer. The decision of the Board of Review was subsequently affirmed by the Superior Court of Clayton County.

On appellate review of unemployment appeals, "[t]his court does not sit as a fact-finding body, but rather one for the correction of errors of law." (Citations and punctuation omitted.) *Moore v. Tanner*, 172 Ga. App. 792, 793 (1) (324 SE2d 772) (1984). "Whether or not an employee voluntarily leaves employment is usually a question of fact, but whether there existed good cause for his voluntary termination more often requires a legal conclusion." (Citations and punctuation omitted.) *Holstein v. North Chem. Co.*, 194 Ga. App. 546, 548 (390 SE2d 910) (1990); *Western Elec. Co. v. Ellison*, 170 Ga. App. 565, 566 (317 SE2d 595) (1984).

Under Georgia law, "[a]n individual shall be disqualified for benefits: (1) For the week or fraction thereof in which the individual has filed an otherwise valid claim for benefits after such individual has left the most recent employer voluntarily without good cause in connection with the individual's most recent work." OCGA § 34-8-194. Our legislature has not statutorily defined the term good cause, but this court has interpreted OCGA § 34-8-158, which contained similar language, and applied the term in various factual settings. In *Holstein*, supra, we held that an employee's inability to properly perform his employment duties without unreasonable risk of harm to his health constituted good cause as a matter of law. However, by contrast, if an employee's voluntary termination from employment is to facilitate a move to a different locality, or based upon the personal dislike for a fellow employee, and impliedly, not related to the conditions of employment, such voluntary departure is insufficient to constitute the good cause necessary to prevent disqualification. Id.; *Ellison*, supra. This court has not addressed the issue of good cause justifying an employee's voluntary departure from employment in the context of verbal and physical abuse by an employer or supervisor. However, "[n]umerous courts have held that [the] intentional harassment of an employee is an abnormal working condition and constitutes good cause for leaving work voluntarily. [Cits.]" *Woods v. Iowa Dept. of Job Svc.*, 327 NW2d 768, 770 (Iowa App. 1982).

In *Associated Utility Svcs. v. Bd. of Review, Dept. of Labor &c.*, 331 A2d 39 (N. J. Super. 1974), where an unemployed claimant therein had been continuously harassed, verbally abused, and mistreated by her supervisor, New Jersey's appellate court concluded that the intentional harassment by her supervisor "creat[ed] such intolerable and abnormal working conditions that [the employee] was justified in quitting the job. . . ." Id. at 41. In *McPherson v. Employment Div.*, 591 P2d 1381, 1390 (Or. 1979), the Oregon Supreme Court noted that "[t]he workplace is the setting of much of the worker's

daily life." Consequently, as a matter of law, a worker is not required to "sacrifice all other than economic objectives and, for instance, endure racial, ethnic, or sexual slurs or personal abuse, for fear that abandoning an oppressive situation will disqualify the worker from unemployment benefits. [Cit.]" Id.

In light of the guidance provided by those decisions, we must agree with Blair that the trial court erred as a matter of law in affirming the decision of the Board of Review because the decision was based in part on a misapprehension of the term "good cause." In addition, the hearing officer incorrectly concluded that Blair accepted the verbally abusive treatment as a condition of her employment. On the contrary, an employee does not waive the right to voluntarily cease employment based upon the abusive treatment of an employer or supervisor merely because the employee tolerated such abusive conduct in the past.

Verbal and physical abuse inflicted by an employer or other supervisory personnel is such an intolerable condition which would make a reasonable and prudent person of normal sensitivity leave such an environment. Therefore, we conclude that, as a matter of law, if an employee's voluntary cessation of employment is due to the verbally or physically abusive conduct of an employer or supervisory personnel which is of such a gravity that would justify a reasonable person to "voluntarily [leave] the ranks of the employed and [join] the ranks of the unemployed," this voluntary departure constitutes the requisite good cause to prevent disqualification. *Associated Utility Svcs.*, supra at 40. See also *Richards v. Daniels*, 615 SW2d 399 (4) (Ark. App. 1981). In these limited circumstances, an employee "cannot then reasonably be judged as free to stay at the job. [Cit.]" *Associated Utility Svcs.*, supra at 40. To conclude otherwise would be inconsistent with Georgia's strong public policy "favoring payment of unemployment benefits to persons unemployed through no *fault* of their own. OCGA § 34-8-2." *Millen v. Caldwell*, 253 Ga. 112, 113 (317 SE2d 818) (1984). See also *Caldwell v. Amoco Fabrics Co.*, 165 Ga. App. 674, 675 (302 SE2d 596) (1983).

Accordingly, the decision of the trial court affirming the Board of Review and hearing officer's denial of Blair's unemployment benefits is reversed, and the case is remanded for reconsideration in light of this opinion.

*Judgment reversed and remanded. McMurray, P. J., and Johnson, J., concur.*

DECIDED JANUARY 13, 1994.

*A. Larry King, Jr.*, for appellant.

*Michael J. Bowers, Attorney General, Valencia D. Copeland, Staff Attorney*, for appellee.