A08A1209. SKINNER v. THURMOND et al.
(669 SE2d 457)

BARNES, Chief Judge.
Rodney Skinner was fired from his job as a supervisor at Paramount Refurbishers, Inc., a company that provided painting and cleaning services to commercial property owners. Paramount challenged Skinner's application for unemployment benefits, contending that he was fired for failing to perform his duties and was thus

disqualified under OCGA § 34-8-194 (2) (A).[1] A claims examiner determined that Skinner was not qualified to receive unemployment benefits, a decision affirmed by an administrative hearing officer, the Department of Labor Board of Review, and the superior court. This court granted Skinner's application for discretionary appeal.

Although the initial examiner found that Skinner's failure to perform his job was within his control and ability, that finding is not supported by any evidence. Skinner testified that he had to rely on subcontractors to perform the work and could not find qualified subcontractors. His employer presented no evidence to the contrary. Accordingly, we reverse.

In considering whether the Board of Review properly found Skinner unqualified for unemployment benefits, both the superior court and this court must affirm that decision if it is supported by any evidence. *Miller Brewing Co. v. Carlson*, 162 Ga. App. 94, 95 (290 SE2d 200) (1982). Under OCGA § 34-8-194 (2) (A), no unemployment benefits are due to an individual who is fired "for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed as determined by the Commissioner according to the circumstances in the case." Under OCGA § 34-8-194 (2) (B), however,

> [a]n individual shall not be disqualified for benefits under subparagraph (A) of this paragraph if, based on the rules and regulations promulgated by the Commissioner, the Commissioner determines: (i) The individual made a good faith effort to perform the duties for which hired but was simply unable to do so; (ii) The individual did not intentionally fail or consciously neglect to perform his or her job duties.

Our public policy favors payment of unemployment benefits to one who is fired from no fault of his own, and thus to disqualify a person, the employer must show by a preponderance of evidence that the discharge was caused by the deliberate, conscious fault of the person. OCGA § 34-8-2; *Jamal v. Thurmond*, 263 Ga. App. 320, 321 (1) (587 SE2d 809) (2003). " 'Fault' means more than mere failure to perform one's work duties. Thus, an employee who does not perform [his]

---

[1] An individual shall be disqualified for benefits
[f]or the week or fraction thereof in which such individual has filed an otherwise valid claim for benefits after the individual has been discharged or suspended from work with the most recent employer for failure . . . to discharge the duties for which the individual was employed as determined by the Commissioner according to the circumstances in the case.

work assignment adequately because [he] is unable to do so (i.e., not through fault or conscious neglect) cannot be penalized under OCGA § 34-8-[194 (2) (A)]." (Citations and emphasis omitted.) *Millen v. Caldwell*, 253 Ga. 112, 113 (317 SE2d 818) (1984).

Consequently, the employer has the burden of proving that the discharge was caused by the claimant's deliberate, conscious fault. *Jamal v. Thurmond*, supra, 263 Ga. App. at 321. Moreover, disqualification for benefits cannot be sustained if the employee did not intentionally fail or consciously neglect to perform his job duties. OCGA § 34-8-194 (2) (B) (ii).

Skinner argues primarily that the evidence does not support the denial of benefits because it does not show the performance inadequacies were deliberately, consciously his fault. Skinner's job was to dispatch subcontractors to clean and paint apartments so they would be ready to lease again, then inspect the work and require the subcontractors to repair any deficiencies. Skinner's former employer testified that he had counseled Skinner regarding the job requirements and the necessity of checking the subcontractors' work each time a problem arose, but Skinner did not improve. Skinner had been told not to use certain subcontractors but continued to use them anyway, although he explained that he did so because he had no one else to do the work. When the employer checked with the turnkey coordinator of one of the company's biggest accounts, the client had some complaints so the employer walked through the apartments that were supposed to be finished. The employer testified that "for the most part most of these apartments were in very bad shape after we had billed the customer . . . for the work that we said was done," but conceded that it was difficult to find qualified subcontractors.

Skinner responded that he had "really struggled" to find qualified subcontractors but did the best he could given the time and money allocated to him. He walked behind the subcontractors to check their work and "on occasion as time permitted" he followed up to ensure any problems were corrected. He did the best he could under the circumstances.

In this case, the initial claims examiner was the only one who addressed whether Skinner was "at fault," finding that "failure to perform was within [his] control and ability." The subsequent hearing officer and the review board made no such finding, concluding only that Skinner "was responsible for seeing that the work was done properly and to the client's satisfaction. The claimant had been warned his job was in danger. No improvement was shown and claimant was discharged."

Although the evidence supports those findings, neither the hearing officer nor the board addressed Skinner's contention that he

was unable to perform the job because he could not find qualified subcontractors and did the best he could given his resources. The employer provided no evidence that Skinner "intentionally" failed or consciously neglected to perform his duties. Further, the initial examiner's finding that Skinner's "failure to perform was within Skinner's control and ability" is not supported by any evidence in the record. The evidence established that it was the subcontractor's job to actually clean and paint the apartments and Skinner's job was to require the subcontractors to perform. Skinner's employer testified that in today's market it was "very hard" to find qualified subcontractors.

Although the "any evidence" rule applies to findings of fact by the administrative tribunal, *Miller Brewing Co. v. Carlson*, supra, 162 Ga. App. at 95, that rule is not dispositive here because the record offers no evidence contrary to Skinner's contention that the problems occurred because of unqualified subcontractors despite his best efforts. *Lamb v. Tanner*, 178 Ga. App. 740, 741 (344 SE2d 534) (1986).

Because no evidence supported the decision of the review board to deny Skinner unemployment benefits, the superior court erred in affirming that decision, and that judgment must be reversed.

*Judgment reversed. Phipps, J., concurs. Johnson, P. J., concurs in judgment only.*

DECIDED NOVEMBER 10, 2008.

*William L. Skinner*, for appellant.

*Thurbert E. Baker, Attorney General, Annette M. Cowart, Senior Assistant Attorney General, Kimberly B. Lewis, Assistant Attorney General*, for appellees.

