IMPERIAL VALET SERVICES,
INC., Petitioner,

v.

Maria L. ALVARADO, Respondent.

No. 11–AA–1500.

District of Columbia Court of Appeals.

Submitted June 20, 2013.

Decided July 25, 2013.

Thomas Heslep, Washington, DC, filed a brief for petitioner.

No brief was filed for respondent.

Before OBERLY and BECKWITH, Associate Judges, and RUIZ, Senior Judge.

OBERLY, Associate Judge:

Petitioner Imperial Valet Services seeks review of a decision of the Office of Administrative Hearings (OAH) finding Maria L. Alvarado eligible to receive unemployment compensation benefits. Upon review, we affirm.

## I. BACKGROUND

In February 2004, the District of Columbia Department of Employment Services found Maria L. Alvarado, respondent in the instant action, eligible for unemployment benefits. Her employer, Imperial Valet Services, owned and represented by George Thanos, appealed the decision to the OAH, which subsequently reversed, finding that Alvarado voluntarily left her employment without good cause. *Alvarado v. Imperial Valet,* No. 09–AA–1110, Mem. Op. & J. at 2, 9 A.3d 804 (D.C. Nov. 24, 2010). Alvarado appealed to this court and we vacated and remanded to allow Alvarado "to fully develop her testimony about being humiliated at her workplace." *Id.* at 5.

On remand, Administrative Law Judge James C. Harmon heard the testimony of Alvarado, her daughter Leyli Flores, and Thanos. Alvarado testified that Thanos had a habit of calling her "stupid" and "a piece of crap" while she was working, in addition to screaming at her, and that as a result she felt "humiliated" and cried during and after work. Flores, who sometimes helped her mother at work, testified that she had overheard Thanos swear and yell at her mother. For his part, Thanos testified that he hardly spoke to Alvarado, or any other Spanish-speaking employee for that matter, as he delegated that responsibility to another employee.

In his final order, the ALJ credited Alvarado's "direct, candid, specific, and plausible" testimony and found that it was corroborated by the testimony of her daughter. He did not credit Thanos's testimony denying ever yelling at Alvarado. The ALJ found that Alvarado had voluntarily quit her position with good cause connected with the work and was therefore qualified to receive unemployment benefits. Petitioner timely appealed.

## II. ANALYSIS

■ "This court must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Rodriguez v. Filene's Basement Inc.,* 905 A.2d 177, 180 (D.C.2006). We also construe the provisions of our unemployment compensation act "liberally and broadly," in order to foster "its purpose of protecting employees against economic dependency caused by temporary unemployment and to reduce the need for other welfare programs." *Bowman–Cook v. Washington Metro. Area Transit Auth.,* 16 A.3d 130, 134 (D.C.2011) (internal quotation marks omitted).

█ An employee who quits her job voluntarily is entitled to unemployment benefits if she meets her burden of showing that she quit her job with "good cause connected to the work." D.C.Code § 51–110(a) (2001); *see also* 7 DCMR § 311.7 (listing examples of good cause). Whether good cause exists is "factual in nature and should be judged by the standard of a reasonably prudent person under similar circumstances." *Kramer v. District of Columbia Dept. of Emp't Servs.*, 447 A.2d 28, 30 (D.C.1982); *see also* 7 DCMR § 311.5.

█ We have not had occasion in our prior cases to determine whether an employee who quits her job because of verbal abuse as opposed to, say, unsafe working conditions may claim to have quit for good cause connected to the work. We therefore take this opportunity to set forth the standard we believe ALJs should apply in considering claims of verbal abuse as justification for an employee to terminate her employment voluntarily. Petitioner argues that "yelling at an employee for a serious mistake ought not to qualify as 'good cause' to leave voluntarily." We agree that "employers have every right to correct or admonish their employees in a reasonable manner when dissatisfied"; however, "employees are not required to accept undue verbal abuse from employers." *Dempsey v. Old Dominion Freight Lines*, 645 So.2d 538, 539 (Fla.Dist.Ct.App. 1994). *Accord, Partee v. Winco Mfg., Inc.*, 141 S.W.3d 34, 38 (Mo.Ct.App.2004) ("An employee should not have to endure verbal abuse as a condition of employment."); *McPherson v. Emp't Div.*, 285 Or. 541, 591 P.2d 1381, 1390 (1979) (stating that employees are not required to "sacrifice all other than economic objectives and, for instance, endure ... personal abuse[ ] for fear that abandoning an oppressive situation will disqualify [them] from [receiving] unemployment benefits"). In considering whether there was "undue verbal abuse" in a particular case, we have examined the law of other jurisdictions and we conclude that the appropriate test calls upon ALJs to consider the totality of the circumstances, including whether the employer habitually hurled verbal insults at the employee,[1] whether the insults were delivered in front of others,[2] whether the employer's reproach was related to performance of the employee's job duties,[3] and whether

---

1. *See Eulo v. Florida Unemployment Appeal Comm'n*, 724 So.2d 636, 638 (Fla.Dist.Ct.App. 1999) (concluding that the employee had good cause to quit because she was "subjected to the verbal abusiveness of her supervisor for an extended period of time"); *Berardi v. Unemployment Comp. Bd. of Review*, 73 Pa. Cmwlth. 549, 458 A.2d 668, 670 (1983) ("[A] claimant need not indefinitely subject herself to unjust accusations and abusive conduct."); *cf. Blair v. Poythress*, 211 Ga.App. 674, 440 S.E.2d 261, 263 (1994) ("[A]n employee does not waive the right to voluntarily cease employment based upon the [verbally] abusive treatment of an employer ... merely because the employee tolerated such abusive conduct in the past.").

2. *See Butler Carpet Co. v. Cole*, 736 So.2d 802, 803 (Fla.Dist.Ct.App.1999) (stating that verbal abuse is "undue" when it "consist[s] of re-

peated and *public* outbursts of offensive language") (emphasis added); *First Fed. Savings Bank v. Unemployment Comp. Bd. of Review*, 957 A.2d 811, 816 (Pa.Cmwlth.Ct.2008) (finding good cause when employer verbally "attacked" the employee's competency in a meeting attended by co-workers).

3. *See Kentucky Truck Sales, Inc. v. Review Bd. of Indiana Dep't of Workforce Dev.*, 725 N.E.2d 523, 526 (Ind.Ct.App.2000) (reversing award of worker's compensation benefits because reprimand, while "indelicately presented," was not "unjustified ... unwarranted [or] unfair") (internal quotation marks omitted); *Lynn v. Unemployment Comp. Bd. of Review*, 58 Pa.Cmwlth. 178, 427 A.2d 736, 737 (1981) ("Resentment of a reprimand, absent unjust accusations, profane language or abusive conduct ... do[es] not amount to [good] cause[ ].") (citations omitted).

the employee attempted to address her employer or a supervisor about the abusive conduct.[4] Requiring an ALJ to weigh these factors (not all of which must be satisfied in every case) shapes our rule to comport with the purposes of unemployment compensation, as opposed to a rule that would be harsher, albeit simpler. *Cf. In re Johnson,* 67 A.D.3d 1228, 890 N.Y.S.2d 134, 136 (2009) ("Neither criticism of one's job performance nor failure to get along with one's supervisor who is perceived as unduly harsh or critical constitutes good cause for leaving employment.") (internal quotation marks omitted).

Considering these factors, the record in this case supports a finding that Thanos's verbal abuse created good cause for Alvarado to quit. As a threshold matter, we note that the ALJ "fully credit[ed]" Alvarado's testimony and "d[id] not credit Mr. Thanos's testimony [that] he never holler[ed] at" Alvarado. "Where credibility questions are involved, 'the factfinding of hearing officers is entitled to great weight,' since the hearing examiner is in the best position to observe the demeanor of witnesses." *Washington Metro. Area Transit Auth. v. District of Columbia Dept. of Emp't Servs.,* 683 A.2d 470, 477 (D.C.1996) (quoting *In re Dwyer,* 399 A.2d 1, 12 (D.C. 1979)).

Based on the record before us, it is clear that Thanos repeatedly verbally abused Alvarado. Indeed, the ALJ found that "on numerous occasions" Thanos called Alvarado "stupid" and sometimes "a piece of crap" and that her daughter heard Thanos utter profanities such as "shit, fuck, stupid, and bitch" at her mother. And, on at least one occasion, Thanos further humiliated Alvarado by calling her "a piece of crap in front of four other employees and her two daughters."

Although the record is not clear whether some of the instances when Thanos insulted or shouted profanities at Alvarado were part of a reprimand for failing to perform her job duties properly, it is clear that several instances of verbal abuse had no connection to Alvarado's job performance. During the relevant time period, Alvarado was a "laundry manager" and was responsible for "wash[ing] the laundry" and "overseeing the rest of the female employees ... do their jobs." She testified that when the washing machines broke down, Thanos would call her "stupid," a "jerk," and a "piece of crap." Additionally, Thanos asked Alvarado to "become a babysitter for [his] cat" and when the cat got lost while Alvarado was "working for his store," he "scream[ed]" at her that she was a "piece of crap." A laundry manager is neither a mechanic nor a pet sitter and the verbal abuse Alvarado suffered in connection with those instances cannot be characterized as instances of reprimand for unsatisfactory performance of her job duties.

Finally, Alvarado testified that, shortly before she quit, she told Thanos that

---

4. *See Swain v. Dir., Dep't of Workforce Servs.,* 102 Ark. App. 171, 283 S.W.3d 603, 604–05 (2008) ("The law does not require a worker to exhaust every possibility in an effort to rectify mistreatment and abuse, but instead requires only that which would be reasonable for an average employee under the circumstances."); *Glenn v. Florida Unemployment Appeals Comm'n,* 516 So.2d 88, 89 (Fla.Dist.Ct.App. 1987) ("Whenever feasible, an individual is expected to expend reasonable efforts to preserve his employment."); *Stevenson v. Morgan,* 17 Or.App. 428, 522 P.2d 1204, 1207 (1974) ("[A] reasonably prudent employe[e] who is being unjustly harassed by a supervisor has a duty to take up his or her grievance with management before voluntarily terminating employment[.]"); *Chapman v. Industrial Comm'n,* 700 P.2d 1099, 1101 (Utah 1985) ("[T]o establish good cause for voluntarily leaving employment, the employee must indicate an effort to work out the problems.") (internal quotation marks omitted).

"[she] was [neither] his daughter, his sister, [n]or a family member, [and] that he had to be careful as to how to treat his employees." Nevertheless, the abuse continued.

After weighing all the factors, the record demonstrates that Alvarado suffered undue verbal abuse by Thanos. Although the ALJ did not have the benefit of the multi-factor, totality-of-the-circumstances analysis we formally adopt here, his review of the record led him to the same conclusion we think the multi-factor test would have produced. Further, substantial evidence supports the ALJ's findings of fact and his conclusion that Alvarado acted as "a reasonable and prudent person in the labor market would" by quitting her job, a conclusion that "flow[s] rationally from [his] findings of fact." *Rodriguez*, 905 A.2d 177 at 180. Accordingly, we affirm the OAH's decision that respondent is entitled to receive unemployment compensation benefits.[5]

*So ordered.*

---

5. Thanos also argues that the ALJ erred in granting Alvarado's motion for adverse inference based on his failure to produce the workplace manager as a witness. Because the ALJ found, and we agree, that even "without the adverse inference against [Thanos], ... the evidence presented by [Alvarado] in this case is sufficient ... to find that there was good cause connected with the work for leaving the job," we need not reach this issue.