**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 4, 2014

# In the Court of Appeals of Georgia

A14A0105. SCOTT v. BUTLER et al.                    JE-006

ELLINGTON, Presiding Judge.

Latresha Scott appeals from an order of the Superior Court of Fulton County that affirmed a decision by the Department of Labor's Board of Review ("Board") denying her application for unemployment benefits.[1] Scott contends, inter alia, that the Board's Administrative Hearing Officer ("hearing officer") erroneously concluded that she did not resign from her job for good cause in connection with her work. She argues that she was effectively forced to resign because, after finding out where she worked, her abusive ex-boyfriend confronted and threatened her at her workplace,

---

[1] This Court granted Scott's application for discretionary review, Case No. A13D0446. See OCGA § 5-6-35 (a) (1).

and, if she had continued to work there, she, her co-workers, and other innocent third parties faced the extreme danger that he would violently attack them.

This case presents an issue of first impression for Georgia's courts, as follows: Whether an employee is disqualified from receiving unemployment benefits under OCGA § 34-8-194 (1)[2] as a matter of law when she quits her job due to the reasonable probability that, if she continued the employment, she (and possibly others) would become the victim of violence committed by a third party who had no employment or business relationship with her employer. For the following reasons, we find that the trial court erred in affirming the denial of unemployment benefits to Scott. Therefore, we reverse the trial court's order and remand this case for further proceedings that are consistent with this opinion.

> On appellate review of unemployment appeals, this [C]ourt does not sit as a fact-finding body, but rather one for the correction of errors of law. Whether or not an employee voluntarily leaves employment is usually a question of fact, but whether there existed *good cause* for his voluntary termination more often requires a legal conclusion.

(Citations and punctuation omitted; emphasis supplied.) *Blair v. Poythress*, 211 Ga. App. 674, 676 (440 SE2d 261) (1994). See *Holstein v. North Chemical Co.*, 194 Ga.

---

[2] See Division 1, infra.

App. 546, 548 (3) (390 SE2d 910) (1990) (accord). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009).

According to the transcript of the hearing conducted by the hearing officer, Scott presented the following uncontradicted evidence. Before Scott started the job at issue in this case, her ex-boyfriend repeatedly and severely physically and mentally abused her throughout their four-year relationship, sometimes in the presence of their two children. At least once, he injured her to the extent that she had to go to a hospital emergency room for treatment. Before and after she ended the relationship in July 2011, she called the police for assistance numerous times, resulting in the man's repeated arrests and convictions for criminal trespass, assault, battery, and cruelty to children. Although she had already obtained two restraining orders against her ex-boyfriend, and even though the terms of his probation prohibited him from having contact with her, he repeatedly violated those orders by stalking, harassing, and threatening her.

At some point in 2012, the ex-boyfriend discovered that Scott was employed at the workplace at issue in this case. In July or August of that year, he appeared at her workplace, followed her home, and, unannounced and uninvited, confronted her on her doorstep. This incident caused her to move into a domestic violence women's shelter at an undisclosed location. Fearing that her ex-boyfriend would not only injure or kill *her* at her workplace, but that he would *also* harm her co-workers and store customers, as well as follow her to the shelter and harm the residents there, Scott took a two-week leave of absence from work. When the threat of a violent attack by her ex-boyfriend still existed at the end of her leave, she discussed the situation with the store manager, who told her to resign.[3] She complied, but, when she applied for unemployment benefits, the employer opposed it, asserting that she had voluntarily quit her job "because of personal circumstances" that were unrelated to her employment and, thus, was disqualified from receiving benefits.

In addition, Scott testified that, a few days after she moved into the battered women's shelter, her stepfather murdered her mother in a murder/suicide incident. Scott's ex-boyfriend appeared at her mother's funeral, grabbed her by her arms, and

---

[3] Despite this fact, Scott does not challenge on appeal the hearing officer's conclusion that she resigned from her job, as opposed to having been effectively discharged.

tried to force her to talk to him before other family members intervened and forced him to leave. According to Scott, after the loss of her mother, she felt that she had to quit her job and move far away from the area, stating that she "didn't want what happened with [her] mom" to happen to her.

Scott also presented an expert witness, who testified that the ex-boyfriend's behavior was typical of domestic violence situations in which the abuse "increases tremendously" after the woman ends the relationship. According to the expert, Scott was in "a lot of danger" at the time she quit her job, and the ex-boyfriend's actions constituted an actual threat of physical harm or death to Scott, her co-workers, and the shelter's residents. She explained that, when a typical abuser goes to the workplace of his former wife or girlfriend in violation of a restraining order, as in this case, "he has no regards for the law. He isn't afraid. He's attempting to assault the individual at [her] workplace[,] and that means by any means[.] [H]e'll try [to] get to the employees that may try to stop him. So she may not be the only one harmed." She testified that she had worked with several other victims of domestic violence who "were told to remain at their jobs and the abuser showed up at their jobs. And . . . not only [was] the victim [harmed], but also [other] employees as well." In addition, in the expert's opinion, if Scott had not quit her job, there was a "tremendous risk" that

her ex-boyfriend would have illegally followed her and discovered the confidential location of the domestic violence women's shelter. Finally, the expert opined that "domestic violence in the workplace . . . is just as serious as any other health and risk factors that we have on the job."

The employer's store manager did not appear for the administrative hearing, and the employer presented no evidence other than Scott's letter of resignation. Although the employer sent a representative to the hearing, she had no personal knowledge of the circumstances surrounding Scott's resignation and stated that she was "surprised" when she heard Scott's testimony, because the store manager had told her only that Scott had quit due to a "family issue."

Following the hearing, the hearing officer denied Scott's application for unemployment benefits, ruling that, while Scott "may have considered the work environment to have been difficult," she had "the burden to do whatever a reasonable person would do to retain her employment." The hearing officer concluded that Scott's resignation was based upon "personal reasons" and not a good, work-connected cause. The Board affirmed the ruling, and, after Scott appealed to the Superior Court of Fulton County, the court affirmed the Board's order.

1. Scott contends that the hearing officer erred in ruling that she did not resign her job for a good cause that was connected to her work and, therefore, she was disqualified from receiving unemployment benefits under OCGA § 34-8-194 (1). OCGA § 34-8-194 (1) provides, in relevant part, as follows:

> An individual shall be disqualified for benefits . . . [f]or the week or fraction thereof in which the individual has filed an otherwise valid claim for benefits after such individual has left the most recent employer voluntarily without good cause in connection with the individual's most recent work. Good cause shall be determined by the Commissioner according to the circumstances in the case[.] . . . [T]he burden of proof of good work connected cause for voluntarily leaving such work shall be on the individual.

Scott argues that her resignation was for a good cause that was connected to her work because she, her co-workers, and the store's customers faced extreme danger at the workplace if she continued to work there. She also contends that, due to the on-going threat of domestic violence occurring at her workplace, she faced an unhealthy and oppressive situation there.

Georgia's General Assembly has formally declared that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state[,]" and, therefore, Georgia's public policy favors payment of

unemployment benefits to "persons unemployed through no fault of their own."

OCGA § 34-8-2. See *Williams v. Butler*, 322 Ga. App. 220, 223 (1) (744 SE2d 396)

(2013). Further, in light of the expressed purpose of the Employment Security Act,

courts should liberally construe the provisions of the Act in favor of the employee,

and statutory exceptions and exemptions that are contrary to the expressed intention

of the Act should be narrowly construed. *Dalton Brick & Tile Co. v. Huiet*, 102 Ga.

App. 221, 224 (2) (115 SE2d 748) (1960).

Although Georgia's appellate courts have not addressed whether the threat of

domestic or third-party violence occurring at a workplace may constitute a good,

work-connected cause for an employee's resignation under OCGA § 34-8-194 (1),[4]

this Court has concluded that verbal or physical abuse inflicted by an employer or

other supervisory personnel constitutes good cause for quitting one's employment,

recognizing that

---

[4] Notably, according to an article published by the Women's Legal Defense and Education Fund, at least 33 other states and the District of Columbia currently extend unemployment benefits to victims of domestic violence. See Legal Momentum, The Women's Legal Defense and Education Fund, ARRA: Extending the Unemployment Insurance Safety Net to Victims of Domestic Violence, October 2009, www.ncdsv.org/images/LegalMom_ARRA%20and%20UI.DV_10-09.pdf .

8

numerous [appellate] courts have held that [such] intentional harassment of an employee is an abnormal working condition and constitutes good cause for leaving work voluntarily. . . . [A] worker is not required to sacrifice all other than economic objectives and, for instance, endure racial, ethnic, or sexual slurs or personal abuse, for fear that abandoning an oppressive situation will disqualify the worker from unemployment benefits.

(Citations and punctuation omitted.) *Blair v. Poythress*, 211 Ga. App. at 676-677. In *Blair*, this Court ruled that

[v]erbal and physical abuse inflicted by an employer or other supervisory personnel is such an intolerable condition [that it] would make a reasonable and prudent person of normal sensitivity leave such an environment. Therefore, we conclude that, as a matter of law, if an employee's voluntary cessation of employment is due to the verbally or physically abusive conduct of an employer or supervisory personnel which is of such a gravity that would justify a reasonable person to voluntarily leave the ranks of the employed and join the ranks of the unemployed, this voluntary departure constitutes the requisite good cause to prevent disqualification. In these limited circumstances, an employee cannot then reasonably be judged as free to stay at the job. To conclude otherwise would be inconsistent with Georgia's strong public policy favoring payment of unemployment benefits to persons unemployed through no *fault* of their own.

(Citations and punctuation omitted; emphasis in original.) Id. at 677.

Moreover, this Court has ruled that unhealthy conditions at the workplace can constitute good cause for resigning from one's employment under OCGA § 34-8-194 (1), concluding that, if the employee

> voluntarily quit his job because the work environment caused or aggravated a pre-existing medical condition [(asthma)] to the extent that he either was unable to perform properly his employment duties, or was unable to perform properly his employment duties without unreasonable risk of harm to his health due to continued employment, and that the employee timely notified his employer of the reason for his decision, such voluntary quitting would be with due cause *as a matter of law*.

(Citations omitted; emphasis in original.) *Holstein v. North Chemical Co.*, 194 Ga. App. at 548 (3).

This Court has even concluded that an employee who resigns her job in order to accept a better job elsewhere is not automatically disqualified from receiving unemployment benefits under OCGA § 34-8-194 (1) if the new job fails to materialize or ends through no fault of the employee. See, e.g., *Harrison v. Thurmond*, 252 Ga. App. 402 (556 SE2d 490) (2001) (ruling that an employee could not be denied unemployment benefits simply because he or she left a job to seek a better position with another company).

And, in fact, this Court has ruled that employees who had not voluntarily resigned but, instead, had been *discharged* by their employers were still entitled to unemployment benefits under the Act[5] when they were discharged based upon their failure or inability to perform their jobs, when such failure or inability was not due to deliberate or avoidable conduct on their parts. See, e.g., *Johnson v. Butler*, 323 Ga. App. 743, 745-746 (748 SE2d 111) (2013) (A teacher who was discharged for failing to pass a required certification examination after eight attempts was entitled to unemployment benefits because the evidence showed that she had made a bona fide effort to pass the test and because there was no evidence that her failure was due to her carelessness or deliberate malfeasance.); *Davane v. Thurmond*, 300 Ga. App. 474, 475-477 (685 SE2d 446) (2009) (An employee who was discharged after she was unable to quickly arrange child care for an unanticipated out-of-state work

---

[5] See OCGA § 34-8-194 (2) (disqualification for unemployment benefits following an employee's discharge or suspension from employment); see also *Johnson v. Butler*, 323 Ga. App. 743, 744-745 (748 SE2d 111) (2013) ("Under Georgia law, no unemployment-compensation benefits are due to an individual who is fired for failure to obey orders, rules, or instructions or for failure to discharge the duties for which the individual was employed[.] . . . However, an individual shall not be disqualified for benefits if . . . the individual made a good faith effort to perform the duties for which hired but was simply unable to do so or the individual did not intentionally fail or consciously neglect to perform his or her job duties.") (punctuation and footnotes omitted).

11

assignment was entitled to unemployment benefits because her lack of child care was not the result of deliberate fault on her part.); *Glover v. Scott*, 210 Ga. App. 25, 25-26 (435 SE2d 250) (1993) (An employee who was discharged after she missed two hours of work in order to attend a judicial proceeding involving her son was entitled to unemployment benefits because such absence was due to circumstances beyond her control, even though the employer had previously warned her that, due to her record of repeatedly being tardy or absent from work, she would be discharged if she was tardy or absent again.).[6]

Accordingly, after considering this Court's analogous precedent, and after liberally construing OCGA § 34-8-194 (1) in favor of Scott and in compliance with Georgia's public policy favoring payment of unemployment benefits to persons who are unemployed through no fault of their own, we conclude that Scott has met her

---

[6] See also *Barnett v. Ga. Dept. of Labor*, 323 Ga. App. 882, 885-887 (748 SE2d 688) (2013) (physical precedent only) (An employee who was discharged for failing to obey the employer's rules and standards of employee conduct when he was insubordinate and disrespectful to his employer was entitled to unemployment benefits because the employer never communicated the unwritten rules or standards to the employee or warned him that such conduct could result in his discharge.); *Skinner v. Thurmond*, 294 Ga. App. 466, 468-469 (669 SE2d 457) (2008) (physical precedent only) (An employee who was discharged for failure to perform his job was entitled to unemployment benefits when the uncontradicted evidence showed that he could not perform his job because he had to rely on subcontractors to perform the work and he was unable to find qualified subcontractors.).

12

burden of demonstrating that she is entitled to unemployment benefits. Even though the employer did not create or contribute to the dangers at issue, to deny Scott benefits under the circumstances presented would, in effect, require her to work in a dangerous environment wherein she and numerous others would be unnecessarily exposed to the actual threat of violence due to circumstances that are entirely beyond their control. This would be an outcome that is unjust, inequitable, and inconsistent with the expressed purpose of the Act. Consequently, we reverse the superior court's order affirming the denial of unemployment benefits to Scott, and we remand this case for further proceedings as necessary to comply with this opinion.

2. Given our decision in Division 1, supra, Scott's remaining enumerated error is moot. See *Kautz v. Powell*, __ Ga. App. __, __ (1), n. 4 (755 SE2d 330) (2014) (Because this Court's ruling in a separate division of the opinion was dispositive of the issue presented on appeal, the appellant's allegation that a related ruling by the trial court was also erroneous was rendered moot.).

*Judgment reversed, and case remanded with direction. Phipps, C. J., concurs. McMillian, J., concurs in judgment only.*.