**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 7, 2019**

# In the Court of Appeals of Georgia

A18A1426.  TRAPPIER  v.  BUTLER,  COMMISSIONER  OF GEORGIA DEPARTMENT OF LABOR.

RICKMAN, Judge.

Anthony W. Trappier was denied unemployment compensation after he left his job as a commercial driver for Seminole Sanitation Services. Trappier appealed, and after a hearing, an administrative hearing officer affirmed the decision. Trappier then sought review by the Department of Labor's Board of Review ("the Board"), and they affirmed the hearing officer's findings and decision. Following the Board's decision, Trappier filed a petition for judicial review in superior court, which affirmed the Board's decision. Trappier requested permission to file a discretionary appeal, which this Court granted. In several enumerated errors, Trappier contends that the superior

court erred by affirming the Board's denial of unemployment benefits. For the following reasons, we reverse.

"Judicial review of an administrative decision requires this Court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact." (Citation and punctuation omitted.) *Hudson v. Butler*, 337 Ga. App. 207 (786 SE2d 879) (2016). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) Id.

We note that the appellee has failed to file a brief in this case. "As a result, we accept [Trappier's] statement of facts as prima facie true and decide the case on the basis of this statement and the evidence cited and quoted in support thereof." (Citation and punctuation omitted.) *Thomas v. Butler*, 330 Ga. App. 675, 676-677 (769 SE2d 104) (2015).

So viewed, the record shows that Trappier worked as a commercial driver for Seminole Sanitation Services from April 2014 to April 2016. On March 17, 2016, Trappier was involved in a fatal car accident while he was driving a Seminole truck.

2

It is undisputed that Trappier was not at fault for the accident. Trappier received injuries in the accident, and he provided Seminole with a doctor's note that excused him from work until approximately 10 days after the accident. As a result of the accident, Trappier sought counseling and was informed that he suffered from post-traumatic stress disorder ("PTSD").

After the accident, Trappier spoke with the owner of Seminole at least twice, informing her that he did not want to drive any longer because of the trauma he suffered after the accident. Seminole's owner offered Trappier a different driving route where he would be able to drive at a slower speed than he did on his previous route, but Trappier informed her that he thought he could no longer drive. Trappier recalled that Seminole's owner also offered him an office job, but that the office job paid at a lower rate than his driving job. Seminole's owner, however, claimed that she did not discuss the option of an office job with Trappier. Seminole's owner told Trappier to take as much time as he needed before returning to work.

Seminole's owner did not hear from Trappier again until November 2016, when he filed a claim for unemployment benefits. At the time that Trappier filed his first claim for benefits, Seminole's owner considered Trappier to be absent from work but still employed by Seminole. However, Trappier believed that his employment had

ended on the day he informed Seminole's owner that he could no longer drive the truck due to the trauma he had suffered after the accident. The claims examiner determined that Trappier was disqualified from receiving unemployment benefits because he was still employed by Seminole. Thereafter, Seminole issued a formal separation notice.

Trappier appealed the claims examiner's decision, and the administrative hearing officer affirmed but modified the basis for the ruling, disqualifying Trappier under OCGA § 34-8-194 (1).[1] The hearing officer found that Trappier quit his employment in March or April 2016 when he informed Seminole's owner that he could no longer drive because of the accident, but that Trappier did not inform Seminole's owner that he was quitting. Ultimately, the hearing officer determined that Trappier was disqualified from receiving unemployment benefits because Trappier did not allow Seminole's owner a full opportunity to address his concerns, and because he did not show that he quit his employment with good cause. Trappier appealed to the Board, which affirmed the hearing officer's decision. Trappier filed

---

[1] "An individual shall be disqualified for benefits . . . [f]or the week or fraction thereof in which the individual has filed an otherwise valid claim for benefits after such individual has left the most recent employer voluntarily without good cause in connection with the individual's most recent work." OCGA § 24-8-194 (1) (A).

4

a petition for judicial review, and the superior court affirmed the Board's decision. The superior court found that the record showed that Trappier did not tell Seminole that he was quitting and did not allow Seminole a full opportunity to address his concerns, even assuming Trappier impliedly resigned from Seminole prior to November 2016, he was still required to show good cause for doing so, but he cited no cases supporting his claim. Trappier requested permission to file a discretionary appeal, which this Court granted.

Trappier contends that the superior court erred by, inter alia, holding that Trappier did not have good cause to support his resignation from Seminole.

As set forth in the Employment Security law, "[t]he public policy of this state is declared to be as follows: economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state." OCGA § 34-8-2. "Therefore, Georgia has a strong public policy favoring payment of unemployment benefits to persons unemployed through no fault of their own." (Citation and punctuation omitted.) *Hudson*, 337 Ga. App. at 209. In accordance with this policy, "courts should liberally construe the provisions of the unemployment statutes in favor of the employee, and statutory exceptions and exemptions that are contrary to the

5

expressed intention of the law should be narrowly construed." Id; see also *Scott v. Butler*, 327 Ga. App. 457, 460 (1) (759 SE2d 545) (2014).

OCGA § 34-8-194 (1) (A) provides that an individual shall be disqualified for unemployment benefits when he or she voluntarily leaves his employment "without good cause in connection with the individual's most recent work." "[T]he burden of proof of good cause in connection with the individual's most recent work shall be on the individual." OCGA § 34-8-194 (1) (D). "Whether or not an employee voluntarily leaves employment is usually a question of fact, but whether there existed good cause for his voluntary termination more often requires a legal conclusion." (Citation and punctuation omitted.) *Holstein v. North Chemical Co.*, 194 Ga. App. 546, 548 (3) (390 SE2d 910) (1990). "The question of whether [Trappier] quit [his] job either with or without 'good cause' requires a legal conclusion...." (Citation and punctuation omitted.) Id. at 207-208.

Whether an employee who suffers work-related PTSD can show good cause for his voluntary termination is an issue of first impression in Georgia. "An employee who voluntarily quits is to be disqualified unless he/she can show that the employer had changed the terms and conditions of work in a manner that the employee, applying the judgment of a reasonable person, would not be expected to continue that

6

employment." Ga. Comp. R. & Regs. 300-2-9-.05 (1). Factors to consider when making this determination include, among others:

> Whether the employee's health was placed in jeopardy by conditions on the job. There must be some clear connection between the health problem and the performance of the job, and professional medical advice is required unless the reason would be obvious that harm to the employee would result from continued employment. . . . Provided, however, the employee must discuss the matter with the employer to seek a solution by another assignment or other changes that would be appropriate to relieve the medical problem before the employee can show good work-connected cause for quitting[.]

Ga. Comp. R. & Regs. 300-2-9-.05 (1) (e).

This Court has concluded that when an individual voluntarily quits "his job because the work environment caused or aggravated a pre-existing medical condition to the extent that he either was unable to perform properly his employment duties, or was unable to perform properly his employment duties without unreasonable risk of harm to his health due to continued employment" and timely notifies his employer of the reason for his decision, "such voluntary quitting would be with due cause *as a matter of law.*" (Emphasis in original.) *Holstein*, 194 Ga. App. at 548 (3).

Here, there is no dispute that Trappier voluntarily quit his job, but the hearing officer concluded that he was disqualified by failing to give Seminole a full opportunity to address his concerns prior to quitting. However, the hearing officer also found that after telling Seminole's owner that he no longer wanted to drive due to the trauma he experienced, that she offered him another driving job. Additionally, Trappier believed that he was also offered a much lower-paying office job. Regardless of whether he was offered the lower-paying office job, the evidence is not disputed that he spoke with Seminole's owner and explained that he could no longer drive at least twice prior to quitting. The evidence is also undisputed that Trappier suffered from a severe work-related accident involving a fatality that was not his fault and, as a result, was diagnosed with PTSD. Trappier testified before the hearing officer that the alternate driving route offered to him by Seminole would require him to drive by the scene of the accident every day, that his doctor advised him to no longer drive, and that he only drove sparingly at the time of the hearing. No one disputes that the harm to Trappier would be obvious by continuing to drive for Seminole.

Construing OCGA § 34-8-194 (1) in favor of Trappier and acknowledging Georgia's policy favoring payment of unemployment benefits to former employees

8

who are unemployed through no fault of their own, we find that Trappier's health problem and the harm to him by continuing to drive for Seminole were obvious, and that his discussions of his concerns with Seminole's owner were sufficient to allow Seminole a chance to address the problem. See *Hudson*, 337 Ga. App. at 211. Accordingly, we reverse the Board's decision and conclude that Trappier quit his job with good cause that he and was not disqualified from receiving unemployment benefits. See id. (holding that a nursing assistant quit with good cause where she had previously informed her employer of a pre-existing condition, her working conditions aggravated the condition, and she had repeatedly asked for assistance so that she could do her job without injury.); see also *Scott v. Butler*, 327 Ga. App. at 463 (1) (reversing the superior court's order affirming the denial of unemployment benefits to an individual who was forced to resign due to the threat of domestic violence in the workplace) (physical precedent only); *Johnson v. Butler*, 323 Ga. App. 743, 745-746 (748 SE2d 111) (2013) (reversing the denial of unemployment benefits to a teacher who repeatedly failed to pass a required certification examination after making a bona fide effort to pass the exam because there was no evidence that her failures were the product of carelessness or deliberate malfeasance).

*Judgment reversed. McFadden, P. J., and Markle, J., concur.*

9