**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and LAND, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**April 30**, 2025

# In the Court of Appeals of Georgia

A25A0242. PEACE v. BRUCE THOMPSON, COMMISSIONER
OF GEORGIA DEPARTMENT OF LABOR et al.

LAND, Judge.

During the COVID-19 Public Health State of Emergency, Dana Peace's employer provided notice of a mandatory in-person meeting that violated the terms of an Executive Order issued by Governor Brian Kemp in response to the public health emergency. Peace appeared but left before the meeting began because she was concerned for her safety, and the employer took Peace's absence as evidence that she quit her employment. Peace applied to the Georgia Department of Labor (the "Department") for unemployment insurance benefits. The Department denied her unemployment claim, and the superior court affirmed that decision upon judicial review. Peace appealed, and this Court vacated the superior court's judgment and

remanded for further proceedings in *Peace v. Butler*, 367 Ga. App. 474 (887 SE2d 70) (2023) ("Peace I"). Upon remand, the Department's Administrative Hearing Officer ("AHO") again denied benefits, and the superior court affirmed that decision. This Court then granted Peace's application for discretionary appeal.[1] For the following reasons, we reverse.

On appeal from a superior court ruling in an administrative action, this Court's "duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Butler v. Butler*, 363 Ga. App. 280, 281 (870 SE2d 857) (2022). On appeal, this Court "must uphold the agency's findings of fact if they are supported by 'any evidence,' and we evaluate de novo the conclusions of law based upon those factual findings." Id.

We are mindful of the General Assembly's declaration that "economic instability due to unemployment is a serious menace to the health, morals, and welfare of the people of this state." OCGA § 34-8-2. We thus "liberally construe the provisions of the unemployment statutes in favor of the employee" and narrowly

---

[1] The State did not file a brief in this appeal.

construe "statutory exceptions and exemptions that are contrary to the expressed intention of the law[.]" *Butler*, 363 Ga. App. at 281.

The following is a summary of facts set forth in *Peace I*:

The record shows that Peace begain working as a sales representative for [Southern Historical News, Inc. ("Southern Historical")] in 2000. In May 2020, during the COVID-19 Public Health State of Emergency,[2] Peace received the following notice in the mail from her employer: "We are planning to reopen June 1st. We will have a meeting Tuesday, May 26th @ 10:00 a.m. Everyone MUST be here if you plan to keep your job." The meeting was to be conducted in-person at the Southern Historical office.

Peace arrived for the meeting early and asked Mike Rogers, Southern Historical's owner, whether the gathering could be held outside to comply with COVID-19 guidelines. Rogers declined the request, indicating that the meeting would proceed indoors in an area where Peace did not believe the attendees (approximately 17 people, most of whom were unmasked) could socially distance. Rogers questioned why Peace and a few others were wearing masks, stating that he was "tired of the GD rules" and making light of the pandemic. According to one witness, Rogers told individuals who were worried about the meeting

---

[2] On April 30, 2020, Governor Brian Kemp extended the Public Health State of Emergency through June 12, 2020. See GA. Exec. Order No. 04.30.01. The executive orders issued in 2020 are available at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

that if they were "scared of the GD virus, [they] should take a gun and put it to [their] heads."

Concerned for her safety, Peace left the office. Jane Everly, her immediate supervisor, sent Peace a text message, stating: "We are starting the meeting so if you're not in it we assume you quit." Peace did not return. At the time, Peace was a "little bit obese" and she believed that she had autoimmune issues, although she had not been diagnosed with an autoimmune disorder. She also lived with her fiancé, who had high blood pressure, a heart condition, and diabetes.

*Peace I*, 367 Ga. App. at 474-475. The AHO in *Peace I*, supra, found that the size of the meeting room made it "impossible to socially distance." In early 2021, Peace was diagnosed as having multiple sclerosis.

In June 2020, Peace applied to the Department for unemployment benefits. A claims examiner denied the claim after concluding that Peace had voluntarily resigned her position. *Peace I*, 367 Ga. App. at 475. Peace appealed that decision to the Department's appeals tribunal, and an AHO was appointed to review the events surrounding her separation. Id. The AHO held an evidentiary hearing and affirmed the denial of benefits. The AHO's order acknowledged that Peace left the meeting due to concerns about the lack of COVID-19 safety guidelines but concluded that she

4

"voluntarily quit her position by walking out of a mandatory meeting without authorization . . . The claimant failed to show a good work-connected cause for quitting." Id. The Department's Board of Review adopted the AHO's findings and affirmed the decision. Id. On motion for reconsideration, Peace argued that the Board failed to consider her claim under an Emergency Rule adopted in March 2020 to specifically address COVID-19. See Ga. Comp. R. & Regs., r. 300-2-9-.06 (5). Id. The Board denied the motion for reconsideration without discussion. Id. Peace then petitioned the superior court for judicial review, and the superior court affirmed the Board. Id.

Peace appealed the superior court's ruling to this Court. In *Peace I*, this Court vacated the superior court's judgment and directed the superior court to make the findings necessary to determine whether Ga. Comp. R. & Regs., r. 300-2-.05 (1) applied and to analyze Peace's claim for benefits under the COVID-19 Emergency Rule, Ga. Comp. R. & Regs. r. 300-2-9.06 (5). *Peace I*, 367 Ga. App. at 475.

Upon remand, the AHO held another hearing on September 28, 2023. The AHO then again denied benefits in a corrected decision, addressing the issues noted

by this Court. The Board and the superior court affirmed the decision to deny benefits.

1. Peace argues that the Department and the superior court erroneously concluded that Southern Historical's failure to adhere to COVID-19 safety protocols did not change the terms and conditions of her employment (as that employment existed at the time) and that Peace lacked a good work-related reason to quit under Ga. Comp. R. & Regs, r. 300-2-9-.05 (1).

In *Peace I*, supra, this Court remanded the case to the Department so that it could make the findings necessary to determine whether Ga. Comp. R. & Regs., r. 300-2-9-.05 (1) (e) applies in this case. See *Peace I*, 367 Ga. App. at 477 (1). Upon remand, the Department modified its original order to conclude that Rule 300-2-9-.05 (1) did not apply because Peace "has not shown that the employer changed the terms and conditions of work when she quit." Peace again applied to the superior court for judicial review. The superior court then held that it was constrained to accept the Department's finding that Southern Historical had not changed the terms and conditions of Peace's work. We disagree and therefore reverse.

OCGA § 34-8-194 (1) (A) provides that an individual shall be disqualified for unemployment benefits when she voluntarily leaves her employment "without good cause in connection with the individual's most recent work." The "burden of proof of good cause in connection with the individual's most recent work shall be on the individual." OCGA § 34-8-194 (1) (D). "Whether or not an employee voluntarily leaves employment is usually a question of fact, but whether there existed a good cause for his voluntary termination more often requires a legal conclusion." (Citation and punctuation omitted.) *Trappier v. Butler*, 348 Ga. App. 522, 524 (823 SE2d 838) (2019).

As this Court has held, unhealthy conditions in the workplace can constitute good cause for resigning from one's employment under OCGA § 34-8-194 (1). *Holstein v. North Chemical Co.*, 194 Ga. App. 546, 548 (3) (390 SE2d 910) (1990). If the employee voluntarily quit her job because she "was unable to perform properly [her] employment duties without unreasonable harm to [her] health due to continued employment" and timely notified her employer for the reason for this decision, "such voluntary quitting would be with due cause *as a matter of law*." (Emphasis in original.) Id. at 548 (3). See also *Hudson v. Butler*, 337 Ga. App. 207, 210 (786 SE2d 879) (2016)

(Nursing home employee had good cause for voluntarily quitting her job as a certified nursing assistance when, despite repeatedly informing director of nursing and assistant director of her pre-existing back injury, they failed to provide her assistance in tending to patients who required two-person assistance to maneuver).

Moreover, the Georgia Department of Labor's Rules state that an employee who voluntarily quits is not disqualified from receiving benefits if she can show "that the employer has changed the terms and conditions of work in a manner that the employee, applying the judgment of a reasonable person, would not be expected to continue that employment." Ga. Comp. R. & Regs. 300-2-9-.05 (1). This Rule provides that the

> [f]actors which the Commissioner shall consider in making ths determination may include, *among others*, the following: . . . (e) Whether the employee's health was placed in jeopardy by conditions on the job. There must be some clear connection between the health problem and the performance of the job, and professional medical advice is required unless the reason would be obvious that harm to the employee would result from continued employment. . . . Provided, however, the employee must discuss the matter with the employer to seek a resolution by another assignment or other changes that would be appropriate to relieve the medical problem before the employee can show good work-connected cause for quitting[.]

8

Ga. Comp. R. & Regs. 300-2-9-.05 (1) (e) (emphasis supplied).

Here, we conclude that the "the terms and conditions" of Peace's work changed when Southern Historical chose not to follow the then existing COVID-19 safety protocols promulgated by the State of Georgia to keep its citizens safe during the COVID-19 Public Health State of Emergency. These protocols were more than mere suggestions by legitimately concerned health officials; they were mandated requirements that were the subject of an Executive Order issued by Governor Kemp. Southern Historical's violation of these requirements gave Peace good cause to leave the worksite.

On March 14, 2020, and in accordance with the powers given to him by OCGA § 38-3-51 (a) and (c), Governor Brian Kemp responded to the COVID-19 pandemic by declaring a Public Health State of Emergency in Georgia. Ga. Exec. Order No. 03.14.20.01. This declaration conferred certain powers upon the Governor, including, but not limited to,

> enforcing laws related to emergency management, performing duties necessary to protect the population, and using available state resources to manage the emergency. During a Public Health State of Emergency, the Governor has the authority to compel a health care facility to provide services, to implement a mandatory vaccination or quarantine program,

and to direct the Department of Public Health to coordinate the state's response to the threat.

(Citation and punctuation omitted.) Ahlzadeh, Marissa & Chac, Fanny, *PREEMPTION: Executive Order by the Governor to Ensure a Safe & Healthy Georgia*, 37 Ga. St. Univ. L. Rev. 95, n. 48 (2020).

In exercise of these statutory powers, Governor Kemp issued an Executive Order on May 12, 2020, ordering that "no business shall . . . allow Gatherings of persons" except as necessary for "Critical Infrastructure.". See Ga. Exec. Order 05.12.20.02.[3] The Order defined "Gatherings" as "more than ten (10) persons physically present in a Single Location if, to be present, persons are required to stand or be seated within six (6) feet of any other person." Id. The Executive Order further mandated that all businesses that do not meet the definition of Critical Infrastructure "shall implement measures which mitigate the exposure and spread of COVID-19 among its workforce." Id. Finally, the Executive Order "strongly encourage[d] the use of face coverings while outside homes or residences." Id. This Executive Order was in effect on May 26, 2020 when Peace was instructed to return to work.

---

[3] This Executive Order can be found at
https://gov.georgia.gov/executive-action/executive-orders/*2020-executive-orders*.

There is no dispute that Southern Historical was not a "critical infrastructure" business on May 26, 2020 and that the requirements of the Governor's Executive Order therefore applied to it. There is also no dispute that Southern Historical violated this Executive Order on May 26, 2020 when it required its 17 employees to congregate in a room that was too small to allow for six foot spacing and when it failed to implement any measures to mitigate the exposure and spread of COVID-19 among its workforce. When viewed in this light, it is evident that Southern Historical changed the terms and conditions of Peace's work when it required her to return to work on May 26, 2020 in clear violation of the Executive Order. Before she was instructed to return to work, Southern Historical was abiding by the Executive Order and was not requiring that Peace congregate with other employees in violation of the Order. On May 26, 2020, Southern Historical changed course and chose to violate the mandates of the Order. Doing so constituted a clear change in the terms and conditions of Peace's work.

It is also clear to us that Southern Historical's change of Peace's work conditions was communicated and effectuated "in a manner that the employee, applying the judgment of a reasonable person, would not be expected to continue that

11

employment." Ga. Comp. R. & Regs. 300-2-9-.05 (1). In light of the ongoing pandemic and our Governor's prompt and decisive response to it, it cannot reasonably be argued that a reasonable person in Peace's situation should be expected to simply ignore her employer's violation of the Executive Order that was issued to protect people like her. Construing Ga. Comp. R. & Regs. 300-2-9-.05 (1) "in favor of [Peace] and acknowledging Georgia's policy favoring payment of unemployment benefits to former employees who are unemployed through no fault of their own," *Trappier*, 348 Ga. App. at 526, we find that Southern Historical's change in the terms and conditions of Peace's employment gave her good cause to leave her employment and that the Department and the superior court erred as a matter of law by finding otherwise.

2. As a result of our ruling in Division 1, we need not address Peace's remaining enumerations of error.

*Judgment reversed. Barnes, P. J., and Brown, J., concur.*