In the Supreme Court of Georgia

Decided:   March 27,  2015

S14A1652. CHAN v. ELLIS.

BLACKWELL, Justice.

Matthew Chan has a website on which he and others publish commentary critical of copyright enforcement practices that they consider predatory. Linda Ellis is a poet, and her efforts to enforce the copyright in her poetry have drawn the ire of Chan and his fellow commentators. On his website, they have published nearly 2,000 posts about Ellis, many of which are mean-spirited, some of which are distasteful and crude, and some of which publicize information about Ellis that she would prefer not to be so public. At least one post is written in the style of an open letter to Ellis, referring to her in the second person, and threatening to publicize additional information about Ellis and her family if she continues to employ the practices of which Chan and the other commentators disapprove. It is undisputed that Chan never caused any of these posts to be delivered to Ellis or otherwise brought to her attention. But it also is undisputed

that Chan anticipated that Ellis might see the commentary on his website, and he may have even intended that she see certain of the posts, including the open letter to her.

Ellis eventually did learn of the posts, and she sued Chan for injunctive relief under the Georgia stalking law, OCGA § 16-5-90 et seq.,[1] alleging that the electronic publication of the posts was a violation of OCGA § 16-5-90 (a) (1), which forbids one to "contact" another for certain purposes without the consent of the other. Following an evidentiary hearing, the trial court agreed that the electronic publication of posts about Ellis amounted to stalking, and it entered a permanent injunction against Chan, directing him to, among other things, delete "all posts relating to Ms. Ellis" from his website. Chan appeals, contending that the evidence simply does not show that the publication of posts about Ellis on his website amounts to the sort of "contact" that is forbidden by OCGA § 16-5-90 (a) (1). With that contention, we agree, and we reverse the judgment of the trial court.[2]

---

[1] The stalking law provides that a court "may grant a protective order . . . to bring about a cessation of conduct constituting stalking." OCGA § 16-5-94 (d).

[2] Chan also urges several other contentions on appeal, including that the scope of the injunction is too broad, that he cannot be held responsible for the publication of commentary

1. We begin with the settled principles that inform our consideration of the meaning of OCGA § 16-5-90 (a) (1). A statute draws its meaning, of course, from its text. See Sentinel Offender Svcs. v. Glover, 296 Ga. 315, 328 (3) (a) (766 SE2d 456) (2014). When we read the statutory text, "we must presume that the General Assembly meant what it said and said what it meant," Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted), and so, "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." FDIC v. Loudermilk, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (citation and punctuation omitted). The common and customary usages of the words are important, Hendry v. Hendry, 292 Ga. 1, 2-3 (1) (734 SE2d 46) (2012), but so is their context. Smith v. Ellis, 291 Ga. 566, 573-574 (3) (a) (731 SE2d 731) (2012). "For context, we may look to other provisions of the same statute, the

posted to the website by others, see 47 USC § 230 (c) (1), and that, in any event, the online publication of commentary about Ellis and her copyright enforcement practices is speech protected by the First Amendment. Although these other contentions may have some merit too, we need not resolve them to decide this appeal. We note, however, that the constitutional contention forms the basis for our exercise of appellate jurisdiction in this case. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1) (Supreme Court has exclusive appellate jurisdiction in "[a]ll cases involving the construction . . . of the Constitution of the State of Georgia or of the United States and all cases in which the constitutionality of a law . . . has been drawn in question").

structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." May v. State, 295 Ga. 388, 391-392 (761 SE2d 38) (2014) (citations omitted). With these principles in mind, we turn now to the relevant statutory text.

In pertinent part, OCGA § 16-5-90 (a) (1) provides that "[a] person commits the offense of stalking when he or she . . . contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."[3] For purposes of the statute, one "contacts another person" when he "communicates with another person" through any medium, including an electronic medium. See OCGA § 16-

---

[3] The same paragraph of the statute also forbids one to "follow" another or "place [another] under surveillance" without consent and for "the purpose of harassing and intimidating the other person," OCGA § 16-5-90 (a) (1), and the following paragraph forbids one to "broadcast" or "publish" certain identifying information about another without consent, in violation of an injunction or other judicial decree, knowing that the broadcast or publication will "cause such person to be harassed or intimidated by others," and "in such manner that causes other persons to harass or intimidate such person." OCGA § 16-5-90 (a) (2). In this case, the trial court said nothing in its permanent injunction about Chan having violated any other injunction or judicial decree, so the permanent injunction does not implicate paragraph (a) (2). As to paragraph (a) (1), the trial court found only that Chan committed stalking by "contacting" Ellis, and it said nothing about Chan having "followed" Ellis or "placed [her] under surveillance." We are not, therefore, concerned in this case with the other ways in which one might commit the offense of stalking. We address only stalking by "contact."

4

5-90 (a) (1).[4] See also <u>Johnson v. State</u>, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994) (as used in OCGA § 16-5-90, "[t]o 'contact' is readily understood by people of ordinary intelligence as meaning 'to get in touch with; communicate with" (citation and punctuation omitted)). Although one may "contact" another for the purposes of the statute by communicating with the other person through any medium, it nevertheless is essential that the communication be directed specifically *to* that other person, as opposed to a communication that is only directed generally to the public.[5] Common and customary usage suggests as

---

[4] The statute defines "contact" in this way: "[T]he term 'contact' shall mean any communication including without being limited to communication in person, by telephone, by mail, by broadcast, by computer, by computer network, or by any other electronic device." OCGA § 16-5-90 (a) (1). Oddly enough, although the principal provision of the statute uses "contact" as a verb — "[a] person commits the offense of stalking when he or she . . . contacts another person" — this definitional provision defines it as a noun. For that reason, we cannot simply substitute the statutory definition for the defined term. At the same time, of course, we cannot just ignore the statutory definition. Accordingly, we understand the definitional provision to mean simply that one "contacts another person" when he "communicates with another person," irrespective of the medium through which the communication occurs.

[5] To say that a communication must be directed *specifically* to another person is not to say that it must be directed *exclusively* to that person. Nor is it to say that the communication must be directed *immediately* to that person without intermediaries or relays. Cf. <u>Murden v. State</u>, 258 Ga. App. 585, 586 (1) (574 SE2d 657) (2002) (defendant "contacted" ex-wife for purposes of stalking law by calling and coming to her workplace to ask for her).

5

much,[6] as does another provision of the stalking law, which defines "harassing and intimidating" in terms of "a knowing and willful course of conduct *directed at a specific person*." OCGA § 16-5-90 (a) (1) (emphasis supplied).

2. That a communication is *about* a particular person does not mean necessarily that it is directed *to* that person. This principle is reflected in Collins v. Bazan, 256 Ga. App. 164 (568 SE2d 72) (2002), and Marks v. State, 306 Ga. App. 824 (703 SE2d 379) (2010), two cases in which our Court of Appeals addressed questions about how the stalking law applies to speech *about* another. In Collins, the trial court entered an injunction that, among other things, forbade the defendant to "discuss" a medical condition of his ex-girlfriend with others. Reversing that portion of the injunction, the Court of Appeals held that it could not be sustained as merely an injunction against stalking, inasmuch as "[p]ublishing or discussing a person's medical condition with others obviously does not constitute . . . contacting that person." Collins, 256 Ga. App. at 165 (2). In Marks, the defendant was prohibited as a condition of probation from "contacting" his ex-wife, and his probation was revoked after he "posted untrue

_____

[6] An ordinary speaker of the English language typically would not say, for instance, that a popular author had "contacted" or "communicated with" the speaker simply because the speaker had read a book written by the author.

6

statements about her on several websites." The Court of Appeals reversed the revocation of his probation, citing Collins and holding that the defendant posting about his ex-wife on the Internet — posts that the ex-wife discovered only as a result of searching for her name on the Internet — did not amount to the defendant "getting in touch with or communicating with [her]." Marks, 306 Ga. App. at 826 (1).

The limited evidence in the record shows that Chan and others posted a lot of commentary to his website *about* Ellis, but it fails for the most part to show that the commentary was directed specifically *to* Ellis as opposed to the public. As written, most of the posts appear to speak to the public, not to Ellis in particular, even if they are about Ellis. And there is no evidence that Chan did anything to cause these posts to be delivered to Ellis or otherwise brought to her attention, notwithstanding that he may have reasonably anticipated that Ellis might come across the posts, just as any member of the Internet-using public might. The publication of commentary directed only to the public generally does not amount to "contact," as that term is used in OCGA § 16-5-90 (a) (1), and most of the posts about Ellis quite clearly cannot form the basis for a finding that Chan contacted Ellis.

3. To the extent that a few of the posts may come closer to "contact" — including, for instance, the open letter to Ellis, which Chan may actually have intended as a communication to Ellis — their publication still does not amount to stalking. Even assuming for the sake of argument that Chan "contacted" Ellis by the publication of any posts, the evidence fails to show that such contact was "without [her] consent." OCGA § 16-5-90 (a) (1). This is not a case in which Chan sent a message to Ellis by electronic mail, linked commentary to her social media account, or posted commentary on her website. To the contrary, the commentary about which Ellis complains was posted on *Chan's* website, and Ellis learned of that commentary — that is, it arguably was communicated to her — only as a result of her choice to discover the content of the website. The evidence shows that Ellis visited the website herself — it appears, in fact, that she registered herself as an authorized commentator on the website — and that she had others visit the website and report back to her about the commentary published there. Generally speaking, our stalking law forbids speech only to the extent that it is directed to an unwilling listener,[7] and even if Ellis did not like

_____

[7] Even then, if the speech is protected by the First Amendment, it is excluded from the scope of our stalking law. See OCGA § 16-5-92 ("The provisions of Code Sections 16-5-90 and 16-5-91 shall not apply to persons engaged in activities protected by the Constitution of

8

what she heard, she cannot be fairly characterized as an unwilling listener. Ellis failed to prove that Chan "contacted" her without her consent, and the trial court erred when it concluded that Chan had stalked Ellis. See OCGA § 16-5-90 (a) (1).

Judgment reversed. All the Justices concur, except Melton, J., who concurs in Divisions 1 and 2 and in the judgment.

---

the United States or of this state . . . .").