**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 25, 2016**

# In the Court of Appeals of Georgia

A16A0455. HUDSON v. BUTLER, COMMR. OF LABOR et al.

MILLER, Presiding Judge.

Nicola Hudson was denied unemployment compensation after she voluntarily quit her job as a certified nursing assistant ("CNA") at Pinehill Nursing Center. Hudson appealed, and after a hearing, an administrative hearing officer ("AHO") affirmed the decision. Hudson also sought review by the Department of Labor's Board of Review ("the Board"), which also affirmed. Hudson then filed a petition for review in superior court, which affirmed the Board's decision. Hudson requested permission to file a discretionary appeal, which this Court granted. Hudson's sole enumeration of error on appeal is that the Board's decision is contrary to Georgia law because she had good cause for quitting her position as a CNA. For the reasons that follow, we agree with Hudson and therefore reverse the Board's decision.

"Judicial review of an administrative decision requires [this Court] to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact." (Citation and punctuation omitted.) *Davane v. Thurmond*, 300 Ga. App. 474, 475 (685 SE2d 446) (2009). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) Id. This Court reviews legal conclusions de novo. *Ga. Dept. of Agriculture v. Brown*, 270 Ga. App. 646, 649 (2) (607 SE2d 259) (2004). "[T]he question of whether [Hudson] quit [her] job either with or without 'good cause' requires a legal conclusion. . . ." *Holstein v. North Chem. Co.*, 194 Ga. App. 546, 548 (3) (390 SE2d 910) (1990).

According to the evidence obtained at the administrative hearing, Hudson worked as a CNA at Pinehill Nursing Center from October 29, 2014, through March 10, 2015. She voluntarily quit her job because she was often required to single-handedly tend to patients who required two-person assistance. Working in this manner aggravated a pre-existing back injury, which caused her to limp, and put both her own safety and that of her patients at risk. The nursing home was aware of her

2

back injury because she listed it in her employment application when she was hired.[1]

Hudson testified that beginning in February 2015, she asked the assistant director of nursing for assistance at least ten times, but she never received any help. On March 10, Hudson submitted a written request to the assistant director of nursing and the director of nursing, asking that she be placed on "PRN" (as needed) status, effective immediately. When she learned that she would not have any assistance on her shift the following day, she advised the director of nursing that she was on PRN status and that she would not be coming in to work because no one was scheduled to assist her that day. The director of nursing told her she was just "having a bad day," that changing to PRN status required two weeks notice for the change to be effective, and if she did not come in, she would be considered a "no call/no show," which would effectively terminate her job. Hudson believed that she had done all that was required to change to PRN status, and she was unaware that she could not change her status

_____

[1] The AHO questioned whether Hudson had submitted medical records. Hudson responded that she was not treated by a doctor for her injury and there were no medical records. Hudson stated, however, that she had listed the pre-existing injury in her application to Pinehill's human resources. Although Hudson subpoenaed the nursing home for copies of this record, the human resources director testified that she did not receive a subpoena.

3

to PRN until the new shift schedule, two weeks later. Hudson did not want to quit her job and only planned to be on PRN status until staffing improved.

Human resources manager Carrie Kilpatrick testified that she believed Hudson quit without notice, and she was unaware of any requests for assistance Hudson may have made. The Director of Nursing, Charlotte Best, testified that Hudson never requested assistance. Best further testified that PRN status was not designed to allow staff to fail to work when scheduled, and changing to PRN status required two weeks advance notice, enough time for the new shift schedule to go into effect. Thus, when Hudson did not report to her shift on March 11, Best considered Hudson to have quit without notice.

After noting that there was no dispute that Hudson had voluntarily quit her job, the AHO found that Hudson had complained to her supervisor multiple times that she needed assistance. Nevertheless, the AHO determined that under OCGA § 34-8-194 (1), Hudson was disqualified from unemployment compensation because she voluntarily left her position for personal reasons. The Board affirmed the AHO's decision, as did the superior court.

"[T]he public policy of this state is . . . that economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people

4

of this state. . . ." OCGA § 34-8-2. Therefore, "Georgia . . . has a strong public policy favoring payment of unemployment benefits to persons unemployed through no fault of their own." (Emphasis in original.) *Williams v. Butler*, 322 Ga. App. 220, 223 (1) (744 SE2d 396) (2013). Moreover, in light of the expressed purpose of the Employment Security Law, OCGA § 34-8-1 et seq., courts should liberally construe the provisions of the unemployment statutes in favor of the employee, and statutory exceptions and exemptions that are contrary to the expressed intention of the law should be narrowly construed. *Dalton Brick & Tile Co. v. Huiet*, 102 Ga. App. 221, 224 (2) (115 SE2d 748) (1960) (construing the former code section applicable to the denial of benefits, Ga. Code § 54-610 (d) and explaining that exceptions must be narrowly construed).

Under OCGA § 34-8-194 (1),

[a]n individual shall be disqualified for benefits . . . after such individual has left the most recent employer voluntarily without good cause in connection with the individual's most recent work. Good cause . . . shall be determined by the Commissioner according to the circumstances in the case. . . . [T]he burden of proof of good cause . . . shall be on the individual.

OCGA § 34-8-194 (1) (A), (B), (D).

This Court has ruled that unhealthy conditions in the workplace can constitute good cause for resigning from one's employment under OCGA § 34-8-194 (1), concluding that, if the employee

> voluntarily quit [her] job because the work environment caused or aggravated a pre-existing medical condition to the extent that [s]he either was unable to perform properly [her] employment duties, or was unable to perform properly [her] employment duties without unreasonable risk of harm to [her] health due to continued employment, and that the employee timely notified [her] employer of the reason for [her] decision, such voluntary quitting would be with due cause as a matter of law.

(Citations and emphasis omitted.) *Holstein*, supra, 194 Ga. App. at 548 (3). Moreover, the Georgia Department of Labor's Rules state that an employee who voluntarily quits is not disqualified from receiving benefits if she can show a "good work connected cause" for quitting. Ga. Comp. R. & Regs., r. 300-2-9-.05. Factors under consideration include

> [w]hether the employee's health was placed in jeopardy by conditions on the job. There must be some clear connection between the health problem and the performance of the job, and professional medical advice is required unless the reason would be *obvious* that harm to the employee would result from continued employment. This includes such obvious things as broken limbs, violent reactions such as allergies due

6

to the environment on the job and similar circumstances. Provided, however, the employee must discuss the matter with the employer to seek a solution by another assignment or other changes that would be appropriate to relieve the medical problem before the employee can show good work-connected cause for quitting.

(Emphasis added.) Ga. Comp. R. & Regs., r. 300-2-9-.05 (1) (e).[2]

There is no dispute here that Hudson voluntarily quit her job. Therefore, the only question before this Court is whether the administrative hearing officer and the Board erred when they found that Hudson did not have *good cause* for quitting her job. We find *Holstein*, supra, instructive here and conclude that the hearing officer's legal determination that Hudson quit for personal reasons was incorrect. The hearing officer found that Hudson had informed the assistant director of nursing and the director of nursing of her pre-existing injury and lack of assistance with residents on many occasions, however Hudson was given no relief. Hudson testified that working on her own, handling patients who required two-person assistance, aggravated her back injury and caused her to limp. Additionally, she explained that working in this manner posed a safety risk to both Hudson and the residents. Hudson's limp would

---

[2] Notifying her supervisors was sufficient to "discuss the matter with the employer," and Hudson was not required to bring her complaints to human resources.

7

have been *obvious* to her employer, especially given that she informed them of her pre-existing back injury when she was hired. Moreover, the director of nursing and assistant director would have been aware of the risks involved in allowing one employee to handle patients requiring two-person assistance. Thus, we find that Hudson's health problem and harm were obvious, and that Hudson's discussion of her concerns with the assistant director of nursing and the director of nursing were sufficient to constitute alerting her supervisor of the problem. *Holstein*, supra, 194 Ga. App. at 548 (3); Ga. Comp. R. & Regs., r. 300-2-9-.05 (1) (e). We therefore conclude that Hudson quit her job with good cause, and she was not disqualified from receiving unemployment benefits. Accordingly, we reverse the Board's decision.

*Judgment reversed. McFadden and McMillian, JJ., concur.*