**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**December 15, 2017**

# In the Court of Appeals of Georgia

A17A1421. SHARPE et al. v. GREAT MIDWEST INSURANCE
  COMPANY et al.

DILLARD, Chief Judge.

In this civil action, Harold and Judy Sharpe sued Phillip Gray, alleging that, while driving a vehicle owned by his employer, Harold suffered injuries when Gray's vehicle collided with his vehicle. Later, the Sharpes sought uninsured motorist coverage and, thus, served their complaint on their own automobile insurance carrier, Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm Bureau"), as well as Harold's employer's carrier, Great Midwest Insurance Company ("GMIC"). Thereafter, GMIC filed a motion to dismiss, both insurers filed motions for summary judgment, and the trial court granted all three motions. On appeal, the Sharpes contend that the trial court erred in granting summary judgment to both insurers on

the ground that they failed to timely notify them of the accident and in granting GMIC's motion to dismiss on the ground that the Sharpes failed to properly serve it with process. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the Sharpes (*i.e.*, the nonmoving parties),[1] the record shows that in the early evening of December 3, 2013, Harold—a superintendent with McLendon Enterprises—was traveling in his company-owned truck just outside of Statesboro. While stopped at an intersection waiting for the traffic signal to change, Harold peered into his rearview mirror, saw another vehicle approaching, and quickly realized that it was traveling too fast to stop before hitting him. Seconds later, the approaching vehicle, driven by Gray, collided into the rear of Harold's truck, pushing the truck into the rear of another vehicle that was also idling at the intersection. As a result of the accident, Harold suffered an injury to his neck.

At the time of the accident, the Sharpes maintained two automobile insurance policies with Georgia Farm Bureau, both of which provided uninsured/underinsured motorist coverage. Additionally, and also at the time of the accident, Harold's employer maintained an insurance policy on Harold's work truck with GMIC, which

---

[1] *See, e.g., Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

2

provided coverage for employees using the vehicle. This policy similarly provided uninsured/underinsured motorist coverage.

On March 9, 2015, the Sharpes filed suit against Gray, alleging that his negligence caused the automobile collision that lead to Harold's injuries. Shortly thereafter, based on their belief that Gray was either uninsured or underinsured, the Sharpes served Georgia Farm Bureau, as their alleged uninsured/underinsured motorist carrier, with a copy of the complaint and summons. On April 3, 2015, the Sharpes also served GMIC, as notice to McLendon's uninsured/underinsured motorist carrier, with a copy of the complaint. Georgia Farm Bureau filed an answer, but GMIC initially did not. Following a brief discovery period, in which both of the Sharpes were deposed, Georgia Farm Bureau filed a motion for summary judgment, arguing that it had no duty to provide coverage because the Sharpes failed to comply with their policies' requirement to provide notice of an accident within 90 days of its occurrence. The Sharpes filed a response, but on November 12, 2015, the trial court granted Georgia Farm Bureau's motion.

The case proceeded, and on the day of the pretrial conference, March 8, 2016, GMIC filed an answer and a motion to dismiss, arguing that the Sharpes had failed to adequately serve GMIC with process. The Sharpes filed a response, arguing that

GMIC had been properly served. Then, on May 17, 2016, while its motion to dismiss was still pending, GMIC filed a motion for summary judgment, arguing similarly to Georgia Farm Bureau that the Sharpes failed to provide timely notice of the accident as required by McLendon's policy with GMIC. Less than one week later, the trial court granted GMIC's motion to dismiss and thereby dismissed GMIC from the case without prejudice. A few days later, the Sharpes served GMIC with a summons, specifically naming the insurer, and thereafter, they filed a response to GMIC's motion for summary judgment. But on October 14, 2016, the trial court granted summary judgment in favor of GMIC. This appeal follows.

It is well established that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] If summary judgment is granted, it enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been satisfied.[3] In conducting this *de novo* review, we are charged with "viewing the evidence, and

---

[2] OCGA § 9-11-56 (c).

[3] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[4] Furthermore, as for motions to dismiss for insufficient service, a trial court's ruling will be upheld on appeal "absent a showing of an abuse of discretion."[5] Of course, when an appeal from the grant of a motion to dismiss presents a question of law, we review the trial court's decision *de novo*.[6] With these guiding principles in mind, we turn now to the Sharpes' specific claims of error.

1. The Sharpes contend that the trial court erred in granting GMIC's motion to dismiss on the ground that the Sharpes failed to properly serve it with process pursuant to OCGA § 33-7-11 (d). We disagree.

Tasked with interpreting statutory language, we necessarily begin our analysis with "familiar and binding canons of construction."[7] Indeed, in considering the

---

[4] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted).

[5] *City of Sandy Springs Bd. of Appeals v. Traton Homes, LLC*, 341 Ga. App. 551, 552 (801 SE2d 599) (2017) (punctuation omitted).

[6] *See id.* (noting that appellate courts apply a *de novo* review to trial court decisions involving a motion to dismiss); *Atlanta Women's Health Group, P.C. v. Clemons*, 299 Ga. App. 102, 102 (681 SE2d 754) (2009) ("This appeal presents a question of law, which we review de novo.").

[7] *Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *accord In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[8] And toward that end, we must afford the statutory text its plain and ordinary meaning,[9] consider the text contextually,[10] read the text "in its most natural and reasonable way, as an ordinary

---

[8] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[9] *See Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text." (punctuation and citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning. . . ." (punctuation omitted)).

[10] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___ (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *Holcomb*, 329 Ga. App. at 517 (1) (same); *see also Tibbles*, 297 Ga. at 558(1) ("The common and customary usages of the words are important, but so is their context.") (punctuation and citation omitted); *Chan*, 296 Ga. at 839 (1) (same).

6

speaker of the English language would,"[11] and seek to "avoid a construction that makes some language mere surplusage."[12] In summary, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[13]

Turning to the statute at issue, OCGA § 33-7-11 (d), in part, provides:

> In cases where the owner or operator of any vehicle causing injury or damages is known, and either or both are named as defendants in any action for such injury or damages, and a reasonable belief exists that the vehicle is an uninsured motor vehicle under subparagraph (b)(1)(D) of this Code section, a copy of the action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy *as though the insurance company were actually named as a party defendant.* . . . In any case arising under this Code section where service upon an insurance company is prescribed, the clerk of the court in which the action is brought shall have such service accomplished by issuing a duplicate original copy for the sheriff or marshal to place his or her

---

[11] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Holcomb*, 329 Ga. App. at 518 (1).

[12] *In the Interest of L. T.*, 325 Ga. App. at 592 (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1).

[13] *Holcomb*, 329 Ga. App. at 518 (1) (punctuation omitted); *accord Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013); *see also Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

return of service *in the same form and manner as prescribed by law for a party defendant.*[14]

The manner in which a party defendant is to be served is governed by OCGA § 9-11-4 of the Civil Practice Act. Under OCGA § 9-11-4 (a), "[u]pon the filing of the complaint, the clerk shall forthwith issue a summons and deliver it for service," and "[u]pon request of the plaintiff, separate or additional summons shall issue against any defendants." In addition, under OCGA § 9-11-4 (b), "[t]he summons shall be signed by the clerk; contain the name of the court and county and the names of the parties; [and] *be directed to the defendant. . . .*"[15] Furthermore, OCGA § 9-11-4 (e) (1) (A) provides:

> Except for cases in which the defendant has waived service, *the summons and complaint shall be served together*. The plaintiff shall furnish the clerk of the court with such copies as are necessary. Service shall be made by delivering a copy of the summons attached to a copy of the complaint as follows . . . If the action is against a corporation incorporated or domesticated under the laws of this state or a foreign corporation authorized to transact business in this state, to the president or other officer of such corporation or foreign corporation, a managing agent thereof, or a registered agent thereof, provided that when for any

---

[14] (Emphasis supplied).

[15] (Emphasis supplied).

reason service cannot be had in such manner, the Secretary of State shall be an agent of such corporation or foreign corporation upon whom any process, notice, or demand may be served.[16]

In this matter, as previously noted, the Sharpes initially served GMIC with a copy of the complaint as notice to McLendon's uninsured/underinsured motorist carrier on April 3, 2015. But at that time, their attempt to serve GMIC did not include a summons, much less a summons directed to GMIC. And under OCGA § 9-11-4, "[p]roper service of summons is necessary for the court to obtain jurisdiction over a defendant."[17] Given these particular circumstances, the Sharpes failed to serve GMIC as though the insurance company were actually named as a party defendant as required by a plain reading of OCGA § 33-7-11 (d).[18] Accordingly, the trial court did not err in granting GMIC's motion to dismiss.

---

[16] (Emphasis supplied).

[17] *Bonner v. Bonner*, 272 Ga. 545, 546 (2) (533 SE2d 72) (2000); *accord Fairfax v. Wells Fargo Bank, N.A.*, 312 Ga. App. 171, 173 (2) (718 SE2d 16) (2011).

[18] *See State Farm Fire & Cas. Ins. Co. v. Terry*, 230 Ga. App. 12, 18 (5) (495 SE2d 66) (1997) (noting that plaintiff properly served UM insurer, in accordance with OCGA § 33-7-11 (d), by serving insurer with the complaint and summons); *see also* Franklin E. Jenkins III & Wallace Miller III, GEORGIA AUTOMOBILE INSURANCE LAW § 36:6 (b) (2016 - 2017 ed.) ("Since the UM carrier must be served as though it were 'actually named as a party defendant,' it stands to reason that a summons should be directed to the UM carrier.").

2. The Sharpes contend that the trial court erred in granting summary judgment in favor of Georgia Farm Bureau on the ground that the Sharpes failed to timely notify Georgia Farm Bureau of the accident as required by a provision in their policies. Again, we disagree.

It is well established in Georgia that insurance contracts are "governed by the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning."[19] It is similarly well established that the hallmark of contract construction is to "ascertain the intention of the parties, as set out in the language of the contract."[20] And when the language of an insurance policy defining the extent of an insurer's liability is "unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties."[21] Importantly, the proper construction

---

[19] *Roberson v. Leone*, 315 Ga. App. 459, 462 (726 SE2d 565) (2012) (punctuation omitted).

[20] *Y.C. Dev. Inc. v. Norton*, __ Ga. App. __ (__ SE2d __), 2017 WL 4945896, *3 (November 1, 2017) (punctuation and citation omitted); *accord Infinity Gen. Ins. Co. v. Litton*, 308 Ga. App. 497, 500 (2) (707 SE2d 885) (2011).

[21] *Roberson*, 315 Ga. App. at 462 (punctuation omitted); *see Litton*, 308 Ga. App. at 500 ("The hallmark of contract construction is to ascertain the intention of the parties." (punctuation omitted)).

10

of a contract, and whether the contract is ambiguous, are "questions of law for the court to decide."[22]

In this matter, both of the Sharpes' personal automobile insurance policies with Georgia Farm Bureau included uninsured/underinsured motorist coverage. Additionally, both policies also included a section titled "PART F - DUTIES AFTER AN ACCIDENT OR LOSS," which provided:

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> A. We must be notified promptly when the insured becomes aware that a loss has occurred, but in no event later than 90 days from the date the accident or loss becomes known by the insured, of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

Here, the accident occurred on December 3, 2013, and Harold testified that his neck began hurting immediately after the collision. But as Harold also testified, the Sharpes did not notify Georgia Farm Bureau about the accident until approximately six months after it occurred, which was well beyond the policies' requirement that

---

[22] *Roberson*, 315 Ga. App. at 462 (punctuation omitted); *accord Clayton v. S. Gen. Ins. Co.*, 306 Ga. App. 394, 396 (702 SE2d 446) (2010).

11

notification be provided within 90 days. Thus, the Sharpes failed to comply with their policies' clear condition precedent to coverage, and "[i]t is well established that a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification."[23]

Nevertheless, the Sharpes argue that their delay in notifying Georgia Farm Bureau was, in fact, justified, claiming that because Harold was driving a truck owned by his employer at the time of the accident, they did not realize they needed to notify their own automobile insurance carrier. This excuse is a nonstarter. Although it is correct that "questions of the sufficiency of the excuse offered, and the diligence in giving the notice are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case,"[24] an unexcused significant delay in notifying an insurer about an incident or lawsuit "may

---

[23] *Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga. App. 12, 14 (703 SE2d 436) (2010) (punctuation omitted); *see Silva v. Liberty Mut. Fire Ins. Co.*, ___ Ga. App. ___, Slip op. at 8-9 (1) (Case No. A17A1503; decided November 14, 2017) (holding that policy's notice provision, which required prompt notice, constituted condition precedent to coverage when it prefaced such language by stating that "[w]e have no duty to provide coverage under this policy unless there has been full compliance with the following duties. . . ."); *Burkett v. Liberty Mut. Fire Ins. Co.*, 278 Ga. App. 681, 683 (a) (629 SE2d 558) (2006) (same).

[24] *Standard Guar. Ins. Co. v. Carswell*, 192 Ga. App. 103, 104 (384 SE2d 213) (1989) (punctuation omitted).

12

be unreasonable as a matter of law."[25] And in this case, any claim that the Sharpes were unaware that they might need to utilize their UM coverage "until some point after the accident occurred provides no excuse."[26] Indeed, the law requires "more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract."[27] Accordingly, the trial court did not err in granting summary judgment in

---

[25] *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316 (1) (562 SE2d 267) (2002).

[26] *Lankford*, 307 Ga. App. at 16; *see Royer v. Murphy*, 277 Ga. App. 150, 151 (625 SE2d 544) (2006) (holding that appellant's argument that doubt on the question of the availability of uninsured motorist coverage would obviate the need for her to provide notice to the insurer "as soon as practicable" following the accident lacked merit); *Walker*, 254 Ga. App. at 316 (1) (holding that appellees' testimony that they did not know their automobile policy might afford coverage for theft did not excuse appellees' failure to timely notify insurer of loss). *Cf. Newberry v. Cotton States Mut. Ins. Co.*, 242 Ga. App. 784, 786 (2) (531 SE2d 362) (2000) (holding that insured's testimony that he had no idea that his homeowner's insurance policy might afford coverage for an intentional tort that occurred at an office Christmas party hundreds of miles from his house created a question of fact regarding whether his delay in notifying his insurer of incident was justified); *Carswell*, 192 Ga. App. at 104 (holding that whether insured's failure to provide earlier notice of claim was excused presented question of fact when insured thought that any claim arising from incident in which insured allegedly injured third party while repossessing third-party's car would have been specious and manufactured).

[27] *Protective Ins. Co. v. Johnson*, 256 Ga. 713, 714 (1) (352 SE2d 760) (1987) (punctuation omitted); *accord Walker*, 254 Ga. App. at 316 (1).

13

favor of Georgia Farm Bureau on the ground that the Sharpes failed to timely notify it of the accident as required by the policies.

3. Finally, the Sharpes similarly contend that the trial court erred in granting summary judgment in favor of GMIC on the ground that the Sharpes failed to timely notify it of the accident as required by its policy insuring Harold's employer's truck. Once again, we disagree.

The GMIC policy at issue included a section titled "Duties In The Event Of Accident, Claim, Suit Or Loss." That section in part provided:

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> a. In the event of "accident"; claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>
> (1) How, when and where the "accident" or "loss" occurred;
>
> (2) The "insured's" name and address; and
>
> (3) To the extent possible, the names and addresses of any injured persons and witnesses.

14

The language in this section was slightly modified by an Endorsement of Georgia Changes, which provided:

> Paragraph 2.a. of Duties In the Event Of Accident, Claim, Suit or Loss is replaced by the following:
>
> a. In the event of "accident"; claim, "suit" or "loss", we or our representative must receive prompt notice of the "accident" or "loss". Include:
>
> (1) How, when and where the "accident" or "loss" occurred;
>
> (2) The "insured's" name and address; and
>
> (3) To the extent possible, the names and addresses of any injured persons and witnesses.
>
> The requirement for giving notice of a claim, if not satisfied by the "insured" within 30 days of the date of the "accident", may be satisfied by an injured third party who, as the result of such "accident", has a claim against the "insured". However, in this event, notice of a claim given by an injured third party must be mailed to us.

Here, the Sharpes provided notice to GMIC about the accident, at the earliest, in March, 2015—essentially at the same time they filed their lawsuit and approximately one year and three months after the accident occurred. But the GMIC

15

policy required that notice of an accident be "prompt," which means "[c]haracterized by readiness or quickness; done, performed, etc. at once, at the moment, or on the spot."[28] And in this matter, we conclude that the Sharpes' 15-month delay in informing GMIC of the accident did not amount to "prompt" notice under the terms of the GMIC policy as a matter of law.[29]

Nevertheless, as they similarly argued with regard to Georgia Farm Bureau's motion for summary judgment, the Sharpes maintain that their delay in notifying GMIC was justified because they were not the named insured on the policy for Harold's employer's truck and, thus, were not aware that such notice was required. Although it is true that Harold's employer was the named insured on the policy, the policy explicitly provided, in the section titled "Who Is An Insured," that: "The following are 'insureds': . . . Anyone else while using with your permission a covered 'auto' you own, hire or borrow. . . ." And there is no evidence, indeed, not even an

---

[28] THE COMPACT OXFORD ENGLISH DICTIONARY 1445 (2d ed. 1991).

[29] *See Silva*, Slip op. at 8-9 (1) (holding that four-year delay in providing notice to insurer of UM claim constituted a failure as a matter of law to provide "prompt" notice of accident); *Burkett*, 278 Ga. App. at 683 (a) (holding that more than one-year delay in providing notice to the UM carrier of the declaratory judgment action did not amount to "prompt" notice under the terms of the insurance policy as a matter of law, and that the plaintiff therefore was not entitled to UM coverage).

16

assertion, that the Sharpes' "ignorance of the terms of the subject insurance policy was due to any fraud or overreaching on the part of [GMIC] or its agents."[30] Moreover, as previously explained, "[t]he law requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract."[31] Given these particular circumstances, the Sharpes' delay in providing GMIC with notice of the accident is without excuse.[32] Accordingly, the trial court did not err in granting GMIC's motion for summary judgment on the ground that the Sharpes failed to timely notify it of the accident as required by the policy insuring Harold's employer's truck.

---

[30] *Johnson*, 256 Ga. at 714 (1) (punctuation omitted).

[31] *Id.* (punctuation omitted).

[32] *See id.* at 713-14 (1) (holding that appellee failed to comply with the requirement in his employer's insurance policy that injuries be reported "as soon as practicable" when he delayed reporting injury for 17 months, and further finding that appellee's excuse that he thought his employer would file a claim and that he did not know the name of his employer's insurer was unreasonable as a matter of law); *Geico Indem. Co. v. Smith*, 338 Ga. App. 455, 456-57 (788 SE2d 150) (2016) (physical precedent only) (holding that insured's failure for nearly six months before notifying her mother's UM carrier of collision was not justified by her attorney's initial belief that UM coverage would not apply and was unreasonable). *Cf. Progressive Mountain Ins. Co. v. Bishop*, 338 Ga. App. 115, 119-20 (2) (790 SE2d 91) (2016) (holding that appellee's 11-month delay in giving insurer notice of accident was not unreasonable as a matter of law because he did not realize the extent of his injuries and thought the other driver's insurance would be sufficient to cover them).

17

For all these reasons, we affirm the trial court's order granting GMIC's motion to dismiss and its orders granting Georgia Farm Bureau and GMIC's motions for summary judgment.

*Judgment affirmed. Self, J., concurs and Ray, J., concurs in judgment only as to division 3 and otherwise fully.*