**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 24, 2024

# In the Court of Appeals of Georgia

A24A0144. WEXLER v. BRUCE THOMPSON, COMMISSIONER OF THE GEORGIA DEPARTMENT OF LABOR.

LAND, Judge.

After leaving his job as an attorney to take care of his children during the COVID-19 pandemic, appellant Shimshon Wexler applied for Georgia unemployment benefits. When the Georgia Department of Labor denied his claim, Wexler applied for Pandemic Unemployment Assistance (PUA) under 15 U.S.C. § 9021 (a), but the hearing officer denied the claim on the ground that Wexler did not work during the pandemic. We granted Wexler's application for discretionary appeal from the Review Board and the superior court's affirmances of this holding. Wexler now argues that the Department's findings were clearly erroneous. We agree and reverse.

"Judicial review of an administrative decision requires the court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 160 (3) (664 SE2d 223) (2008), quoting OCGA § 50-13-19 (h); see also *Swarn v. Thompson*, 369 Ga. App. 321, 322 (893 SE2d 474) (2023) (legal conclusions are reviewed de novo).

We note at the outset that the Commissioner of Labor has notified this Court that it "has decided not to submit a brief" in this case. In the absence of such a brief, we are entitled to assume that the Commissioner is "satisfied with [Wexler's] presentation" of the case, including the "material facts relevant to the appeal." Court of Appeals Rule 25 (a) (5) and (b). Although we construe the record in favor of the Review Board and superior court's factual determinations, the Department's decision not to file a brief means that we accept Wexler's statement of material facts as undisputed. Id. We thus consider only whether the administrative agency's conclusions "are supported by any evidence," *Pruitt Corp.*, 284 Ga. at 161 (3) – that is, whether they are "[c]learly erroneous in view of the reliable, probative, and substantial evidence on the whole record[.]" OCGA § 50-13-19 (h) (5).

So viewed, the record shows that at the administrative hearing, Wexler testified that he was performing legal work before and during the beginning of the COVID-19 pandemic. Wexler testified that he continued working until Friday, March 13, 2020, after which he became the primary caregiver for two of his three children, who were four and six years old and whose school was then closed. Wexler's wife is a pediatrician whose work took her away from the home. The hearing officer accepted Wexler's testimony, concluding that he "last worked on or about March 13, 2020," but denied his appeal from the denial of PUA benefits because he had "last worked prior to the pandemic." The hearing officer based this conclusion on the fact that Wexler was last paid by a legal client on January 16, 2020, which was "before the pandemic effective date of January 27, 2020."

Wexler appealed the hearing officer's decision to the Review Board, which held a hearing. There, Wexler again testified that he had stopped working on March 13, 2020, and provided bank records showing court filing fees throughout January and February 2020, a transaction with the State Bar of Georgia on February 12, and a transaction to view federal court records on February 27. Wexler again explained that he became the primary caregiver for his children after March 13 and described his

attempt to participate in a hearing from home as they demanded his attention, which he described as a "total disaster" for which he was reprimanded.

Despite this undisputed evidence, the Review Board adopted the officer's findings and affirmed the denial of PUA benefits, finding that Wexler had "provided no evidence to show that he was performing work prior to March 8, 2020, and that his unemployment is a result of the pandemic." The Review Board also found that Wexler had "provided no evidence to show that he is the sole caregiver for his children." Wexler appealed to the superior court, which held a hearing (at which the Department did not appear) and summarily affirmed the Review Board. We granted Wexler's application for discretionary review of these decisions.

On appeal, Wexler again argues that the Department's determination that he did not cease working as a result of the COVID-19 pandemic was not supported by the evidence and was thus clearly erroneous. We agree.

At the time of Wexler's application for PUA, federal law defined a "covered individual" as a person who meets two requirements: being ineligible for regular unemployment compensation; and being "unemployed, partially unemployed, or unable and unavailable to work because" of circumstances including that "a child . .

4

. for which the individual has *primary* caregiving responsibility is unable to attend school" as a result of the pandemic. (Emphasis supplied.) 15 U.S.C. § 9021 (a) (3) (A) (i), (ii) (I) and (dd). A party seeking benefits may prove these requirements by means of "self-certification." Id. at (a) (3) (A) (ii). And the United States Department of Labor issued guidance as to such circumstances as follows:

> An individual has "primary caregiving responsibility" for a child or other person in the household if he or she is required to remain at home to care for the child or other person. This includes an individual whose job allows for telework, but for whom *the provision of care to the child or other person with a closed school or other facility requires such ongoing and constant attention that it is not possible for the individual to perform work at home.*

(Emphasis supplied.) United States Department of Labor Unemployment Insurance Program Letter No. 16-20 (April 5, 2020); see also *Swarn*, 369 Ga. App. at 325 n. 21 (citing the July 2020 version of the same letter).

Inexplicably, the hearing officer concluded that even though Wexler "last worked on or about March 13, 2020," he had provided "no evidence to show that he was performing work prior to March 8, 2020, and that his unemployment is the result of the pandemic." On the contrary, Wexler provided undisputed evidence, both testimonial and documentary, that he was working as an attorney up until March 13,

2020, and that he stopped working to become the primary caregiver for his two young children, whose school was no longer in session as a result of the pandemic. Wexler also gave a specific example of the hearing incident in which he was unable to do his job adequately because of the demands of caring for his children, thus showing that he was required to give them his "ongoing and constant attention." Program Letter No. 16-20.

The hearing officer was also unjustified in suggesting that Wexler was required to prove that he was the "sole" caregiver when the statute provides relief for a "primary" caregiver, which he was for two of his three children as his wife's job had her working outside the home. Equally unjustified was the conclusion that Wexler stopped working at the time he received his last contingency fee from a client. We should not have to explain that payment for an attorney's services may come, if at all, well after work on the matter has been performed and that the last payment date does not equate with the last date an attorney performed legal work. Finally, no part of the record indicates that the hearing officer doubted the credibility of Wexler's testimony, which was supported by documentary evidence. See *Swarn*, 369 Ga. App. at 326.

On this record, then, Wexler qualified for PUA benefits under 15 U.S.C. § 9021 (a) (3) (A), having stopped work as a result of the pandemic. The hearing officer, the Review Board, and the superior court thus clearly erred when they reached a contrary conclusion. See *Swarn*, 369 Ga. App. at 326 (applicant's uncontested evidence, including her testimony that she stopped working as a childcare provider and translator due in part to her fear of contracting COVID given her underlying health conditions, was sufficient to show that the superior court's finding to the contrary was clearly erroneous); *Hudson v. Butler*, 337 Ga. App. 207, 209 (786 SE2d 879) (2016) ("courts should liberally construe the provisions of the unemployment statutes in favor of the employee"). We therefore reverse the superior court's affirmance of the Board's decision and direct it to remand the case to the Board in order to calculate the amount due to Wexler.

*Judgment reversed and case remanded with direction. Miller, P. J., and Markle, J., concur.*